Bruce A. Fields (102426)
bfields@bfieldslaw.com
Bruce A. Fields A.P.C.
1801 Century Park East, 24th Floor
Los Angeles, California 90067
Telephone: 310-552-7832
Facsimile: 800-279-4830

Attorneys for Plaintiff
Dream Marriage Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dream Marriage Group, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Anastasia International, Inc. et al., <br><br> Defendants. | Case no. CV 10-5034 RSWL (FFMx) <br><br> OPPOSITION TO EX PARTE APPLICATION TO LIMIT THE DURATION OF THE DEPOSITION OF ELENA SYKES AS AN INDIVIDUAL, AND AS A 30(b)(6) WITNESS <br><br> Judge: Hon. Fredrick F. Mumm <br> Courtroom: E 9th Floor |

Plaintiff Dream Marriage Group, Inc. ("Plaintiff" or "DMG") hereby opposes the *ex parte* application filed by Defendant Anastasia International, Inc. ("Defendant" or "Anastasia") to limit the depositions of Elena Sykes, as follows:

## INTRODUCTION

The Defendant in this action, a direct competitor of DMG's, seeks, by way of the instant *ex parte* application, to continue its practice of stone-walling and evading Plaintiff DMG's attempts at discovery, which will be more fully explained herein. DMG contends that this Ex Parte request is not brought in good faith and lacks good cause. Defendant has known for weeks that Plaintiff would be seeking the individual deposition of Elena Sykes (aka Elena Besudin) (d/b/a Maine Webmasters), as Ms. Sykes was personally served with a subpoena on July 26, 2011 and Plaintiff immediately provided notice by overnight mail

served on July 28, 2011 that the deposition was scheduled for August 29, 2011 near Ms. Sykes' residence located in Bangor, Maine. Ms. Sykes was personally served with a subpoena in that her business activities range working with and through other companies including and not limited to Maine Webmasters, Inc. ("Maine Webmasters"), companies that have been linked to conduct which forms the basis of Plaintiff's claims in this case.

The FRCP 30(b)(6) deposition was noticed to follow Ms. Sykes on August 30, 2011, also in close proximity to Defendant's business.

Defendant had notice of the dates and both depositions and it was not until August 17, 2011 that Defendant's counsel advised DMG's counsel that the Defendant had designated Elena Sykes to be the sole 30(b)(6) designated witness ("PMK"), even though DMG's counsel first inquired about the PMK on August 8, 2011.

After the Court's order on August 16, 2011 to enable DMG to depose the PMK for up to two days, DMG's counsel booked and prepaid for air travel from Los Angeles to Bangor, Maine and hotel accommodations for departure on Sunday August 28, 2011, so Plaintiff could commence Ms. Sykes deposition as noticed on August 29, 2011. (Declaration of Bruce A. Fields ("Fields Decl.") ¶ 5.)

## FACTS

### I. PROCEDURAL HISTORY OF DISCOVERY IN THIS MATTER

On or before February 4, 2011, DMG first disclosed, pursuant to Fed. R. Civ. P. 26(a)(1)(A), that it believed Elena Sykes (nee Besuden) to have discoverable information as the "CEO of Anastasia International, Inc.; technical and administrative contact for maineinc.net, maine-inc.net." Plaintiff Dream Marriage Group, Inc.'s Amended Initial Disclosures Pursuant to Rule 26 of the Federal Rules of Civil Procedure ("Rule 26 Discl.") 3:12-15; Fields Decl. ¶ 8 and Exhibit C. At that time, DMG also provided notice to the Defendant that it expected to obtain discovery from an unknown representative of Maine Webmasters, Inc. ("Maine Webmasters") expected to testify regarding "DNS and other hosting of the Infringing Domain Names, as defined in Plaintiff's Third Amended Complaint." Rule 26 Discl. 3:21-24; Fields Decl. ¶ 8 and Exhibit C.

On March 15, 2011, DMG served on the Defendant requests for production (198) and admission (144), and a set of interrogatories (13) (the "Discovery Requests"). These Discovery Requests attempted to glean much of the same information DMG now seeks testimony on from Anastasia, as an entity, pursuant to Fed. R. Civ. P. 30(b)(6), even though some questions not presented in the 30(b)(6) categories may be presented to Ms. Sykes. The inquiries directed to the 30(b)(6) deposition are separate from what DMG needs to learn from Elena Sykes as an individual. Fields Decl. ¶ 10.

On May 18, 2011, following DMG's agreement to a thirty day of extension of time to respond, Anastasia served responses consisting almost entirely of objections and evasive responses that fall considerably short of its obligation to produce responsive information and admissions. Fields Decl. ¶ 10.

In a meet and confer on June 10, 2011, Defendant's counsel agreed to supplement responses and to further produce documents; however, this has not yet happened and counsel has been silent as to when the further responses and documents will be provided. DMG is presently preparing a Joint Statement pursuant to L.R. 37-1, in advance of a motion to compel this production of documents and the supplemental responses. Fields Decl. ¶ 11.

On June 29, 2011, DMG served Elena Sykes with a subpoena to appear for deposition in her individual capacity, as a non-party witness (D.E. 65-2, 3). The deposition is scheduled for August 29, 2011, at a location near her residence in Bangor, Maine. Immediately following the service of the subpoena, DMG served notice of her deposition (D.E. 65-2, 1-2, 4), together with a deposition for the "person(s) most knowledgeable" with respect to certain identified matters from the Defendant corporation (D.E. 65-3) and a deposition of the individual, Alexey Eremin, identified by Anastasia as its "President, Secretary and Treasurer" (D.E. 65-4), via Express overnight mail. The notices set the depositions of the "person(s) most knowledgeable" on August 30, 2011 and of Alexey Eremin on August 31, 2011, also in Bangor, Maine, where the Defendant maintains its principal place of business.

On August 8, 2011, DMG's counsel inquired as to who would be the person(s) designated for deposition pursuant to Rule 30(b)(6). Fields Decl. ¶ 6.

On August 15, 2011, after learning from Anastasia's counsel that Alexey Eremin would not be available for deposition as noticed, and as the scope of the discovery necessary to conduct via deposition became more clear, DMG applied for leave of the Court to increase the length of the deposition of the person(s) designated most knowledgeable to two seven-hour days (D.E. 60).

On August 16, 2011, that application was granted, over Anastasia's opposition (D.E. 64). In so granting, the Court cautioned DMG not to inquire about areas outside the designated categories or to otherwise needlessly extend the deposition. DMG has no intention of doing so.

Immediately thereafter, on August 17, 2011, Anastasia suddenly knew who it would designate pursuant to Rule 30(b)(6) for all categories identified by DMG: Elena Sykes. The timing of Defendant electing Ms. Sykes to solely appear for the Rule 30(b)(6) motion only following the Court's Order of August 16, 2011 suspiciously implies that this decision was a tactful maneuver to circumvent and pre-empt Plaintiff's discovery efforts. DMG Has Attempted to Meet and Confer and Proposed Alternatives.

On August 17, 2011, Defendant's counsel for the first time advised that Elena Sykes would be the designated PMK for defendant and requested DMG's counsel to provide a list of categories of inquiry that counsel intended for the Ms. Sykes' individual deposition and at first insisted that three days of Ms. Sykes appearing for deposition would be overly burdensome with Defendant contending that the PMK categories should encompass the entire inquiry of questioning. Fields Decl. ¶ 7.

The Court indicated in its Order of August 16, 2011 that DMG could not in any way deviate beyond the PMK categories with respect to the PMK deposition.

Through an email exchange with Defendant's counsel, counsel for DMG committed to questioning Elena Sykes, during her individual deposition on August 29, 2011, only with regard to the subject matter outside the specific focus of the PMK categories, and not with

1  regard to any PMK categories barring the mutual consent of counsel for both parties. In a
2  final attempt to resolve this issue, DMG's counsel offered to begin the PMK deposition
3  immediately following the individual deposition of Ms. Sykes on August 29, 2011, then to
4  proceed with the PMK deposition in accord with the Court's order of August 16, 2011,
5  which provides up to (14) hours of on the record examination, if needed. Fields Decl. ¶ 7.

   Again, given the fact that DMG provided notice of the depositions on July 28, 2011,
that DMG inquired about the PMK on August 8, 2011 and then pre-paid travel to begin the
subpoenaed deposition on August 29, 2011, it will be prejudicial to DMG to now force
DMG to change the schedule and limit the depositions and allow Defendant to dictate and
control Plaintiff's deposition strategy. It will further prejudice DMG's discovery efforts to
pre-empt and limit the amount of time DMG has to conduct the depositions before the
depositions actually commence. Fields Decl. ¶ 16.

## II.  ANASTASIA'S MANY PERSONS AND TANGLED WEB

   The Defendant corporation identifies itself in its promotional materials as having "a staff of over 150 full-time employees" run by "all of [the Defendant's] department managers [who] are trained in the Jakob Nielsen and Donald Norman management programs," with an "in-house computer programming department" and "a network of over 400 local agencies operating in cities throughout the former Soviet Union." Declaration of Andy Schmitt ("Schmitt Decl."), ¶ 18.

   Further, the Defendant's discovery responses to date have been completely evasive to having knowledge concerning its involvement or Maine Webmasters' involvement with it's published partner IT Online, who appears to share offices with Defendant in Russia. Anastasia's Responses to Interrogatories number 5 and 6 (Fields Decl. Exhibit D, pp20-22). DMG's investigation to date has uncovered the outlines of, a complex web of domestic and foreign individuals and entities DMG believes are responsible, under Anastasia's direction and control, for the harms visited upon the Plaintiff. Fields Decl. ¶¶ 13-15; Schmitt Decl. ¶7.

   This web includes, at the very least, an entity known as "IT Online" in Russia,

identified by the Defendant as its "partner" (Schmitt Decl. ¶ 13), and Maine Webmasters, Inc., a corporation purportedly dissolved that the Defendants have acknowledged Elena Sykes "participated in the formation of" (Anastasia's Responses to Interrogatories number 7, Fields Decl. Exhibit D, pp22-23) and which listed Elena Sykes (nee Besuden) as its technical and administrative contact person in various Internet databases. Schmitt Decl. ¶¶7(f), 17, 21. IT Online lists Maine Webmasters as a partner for whom it has provided several major projects; Schmitt Decl. ¶ 14.

The Defendant claims to have "no documents referencing any form of business arrangement or relationship between Anastasia and Maine Webmasters, Inc." (Anastasia's Responses to Interrogatories number 7, Fields Decl. Exhibit D, pp22-23), and, despite making repeated mention of IT Online on its varied webpages and being intricately linked to IT Online through its various business activities (Schmitt Decl. ¶¶ 7(f), (i); 8, 13, 15, 18, 20, 23), additionally and non-credulously claims to have "no documents referencing any form of business arrangement or relationship between Anastasia and IT Online." (Anastasia's Responses to Interrogatories number 6, Fields Decl. Exhibit D, pp21-22). Further, Defendant's responses to requests for admissions addressing Maine Webmasters were evasive and obstructive giving one the impression that it knows nothing with respect to this entity. (Anastasia's Responses to Requests for Admission numbers 52-54, Fields Decl. Exhibit D, pp24-26). Again, these responses is what prompted DMG to have no other choice but to personally serve Elena Sykes with a deposition subpoena. Fields Decl. ¶ 12-15.

The screen scraping alleged by DMG in its Third Amended Complaint ("Complaint") in this action originated in computers apparently under the control of IT Online, who does not identify Anastasia International as a partner, but does list Maine Webmasters in that capacity. (Schmitt Decl. ¶ 14). The infringing domain names listed in DMG's Complaint were configured to use name servers registered not to Anastasia International, but to Maine Webmasters, which Elena Sykes is highly connected to. (Schmitt Decl. ¶¶7(f), 17, 22).

## DISCUSSION

### I. THE FEDERAL RULES OF CIVIL PROCEDURE PERMIT DMG'S DEPOSITIONS

The Defendant seeks to limit the depositions of Elena Sykes pursuant to Fed. R. Civ. P. 26(b) and 30(d).

Fed. R. Civ. P. 26(b)(2)(A) provides the Court with the discretion to limit "the length of depositions under Rule 30," which, in turn, reads in relevant part: "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). In this action, the Court has ordered a second day, for a total of fourteen hours, for Anastasia's person(s) most knowledgeable. DMG has not sought to increase the length of its deposition of Elena Sykes as an individual which, as set forth in greater detail *infra*, is a separate deposition.

Fed. R. Civ. P. 26(b)(2)(C) requires the Court to "limit the frequency or extent of discovery otherwise allowed" if it finds that the discovery sought meets the criteria enumerated at Rule 26(b)(2)(C)(i)-(iii), none of which are applicable here.

#### A. The discovery sought is not unreasonably cumulative or duplicative, and cannot be obtained from some other source that is more convenient, less burdensome, or less expensive

DMG has already committed to avoiding cumulative or duplicative questioning of Elena Sykes as an individual, distinct from Elena Sykes as a person most knowledgeable for entity Defendant Anastasia. Additionally, as set forth in greater detail *supra*, DMG has already attempted to obtain largely equivalent discovery via interrogatories, requests for admission, and requests for production. Those attempts were thwarted by the dilatory and evasive conduct of Anastasia. Finally, as set forth in greater detail *infra*, DMG requires information beyond the institutional knowledge of Anastasia, but within Elena Sykes' personal knowledge, which is available to Plaintiff only through deposition.

#### B. DMG has not had Ample Opportunity to Obtain by Discovery

As set forth in greater detail *supra*, Defendant has attempted to evade providing any

substantive responsive discovery on these matters to date, including documents responsive to the Requests, even though Defendant's counsel agreed to supplement over (75) responses and to produce additional documents as a result of the meet and confer that took place on June 10, 2011. Even though Defendant's counsel first assured that further discovery would be provided, the lack of communication and delivery of documents as assured has forced Plaintiff to begin preparation of an extensive Joint Statement, incurring substantial fees and likely to burden the Court. Given the vastness of Defendant's international operations, substantial time will be necessary in the depositions, just to inquire into the witnesses investigation efforts in responding the written discovery responses.

### C. The Benefit Outweighs any Additional Burden or Expense

This case involves two competitors in a highly competitive industry, one of whom has elected to compete most unfairly. Plaintiff conservatively estimates the damage done to it by Anastasia in excess of a million dollars. The facts Plaintiff hopes to establish through these depositions are crucial to establishing its claims and Anastasia's possible defenses. Anastasia, by its own statements, is a large company with a substantial operation. It chose to designate a single individual out of its purported more than 150 full-time employees including various department managers Defendant's choice to elect one individual to respond to (30) PMK categories should not pre-empt and preclude DMG from inquiring into Defendant's efforts to investigate it's operations with respect to DMG's (355) discovery requests, Maine Webmasters' covert activities, some of which appear to be operating and hiding behind companies not reachable to United States laws and its courts. To limit Plaintiff's discovery is prejudicial and further plays into the hands of Defendant's continuing efforts to evade and obstruct Plaintiff's legitimate discovery efforts in this case.

## II. SEPARATE DEPOSITIONS ARE APPROPRIATE
### C. Elena Sykes is Presumptively Subject to a Separate Deposition

Although the Defendant cites to *Sabre v. First Dominion Capital, LLC* in support of its position that Elena Sykes should not be subject to one seven-hour day of deposition as an individual together with the Court-expanded two seven-hour days of deposition as

Anastasia's Rule 30(b)(6) designated person, the court there actually held the opposite: "the 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent" time limit. *Sabre v. First Dominion Capital, LLC*, 51 Fed. R. Serv. 3d 1405 (S.D.N.Y. 2001). The Defendant has not overcome this presumption.

Additionally, given the size and international complexity of the Defendant's operations, its suggestion that Elena Sykes' personal knowledge also constitutes the total knowledge of Anastasia as an entity seems, at best, extremely unlikely.

Nonetheless, that the Defendant has elected to designate Elena Sykes, and presumably prepare her with the information known and reasonably available to it as an entity as it is bound to do, is its own choice. But Anastasia should not be able, by such maneuvering, to thwart the order of this Court granting DMG fourteen hours in which to depose the person(s) most knowledgeable, or the Federal Rules of Civil Procedure, which provide seven independent hours for DMG to depose Elena Sykes as a non-party witness.

### D. Information from Elena Sykes Cannot be Otherwise Obtained

As Defendant's counsel points out, Elena Sykes is not a party to this action. "Depositions are the only way to obtain testimony and documents from a nonparty witness." Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A ¶11:1407 (citing *Pennsylvania R. Co. v. The Marie Leonhardt*, 179 F. Supp. 437, 438 (E.D. Pa. 1959)). As set forth above, there are substantial and complex factual issues, icebergs of which DMG has uncovered only the tip, which DMG expects Anastasia as an entity to disavow all knowledge of, that are nonetheless likely to be within Elena Sykes' personal, individual knowledge. As such, an individual deposition of Elena Sykes is appropriate.

### E. Information from Elena Sykes is Relevant

As set forth above, DMG has considerably more than a good faith belief that Maine Webmasters, Inc., or whatever may be left of it, is intrinsically linked to its causes of action. The Defendant has tried to distance itself from the actions of what it apparently asserts are independent third parties, all of whom DMG can already, albeit in many cases somewhat tenuously, link back to either or both IT Online and Maine Webmasters. These actions are

taken for the direct benefit of the Defendant yet, if its responses to discovery to date are to be believed, are somehow beyond its knowledge. As these matters constitute, or are needed to ascertain the existence or whereabouts of, the facts necessary to conclusively prove Plaintiff's claims, they are clearly relevant. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 824 (9th Cir. 2004). Fields Decl. ¶15.

Further, DMG should be able to ask Ms. Sykes any pertinent question regarding the Defendant not covered within the (30) categories directed to the Rule 30(b)(6) deposition without restriction.

### F. Defendant has not made a Strong Showing of Good Cause

Before this Court, a "party seeking a court order to extend or shorten a deposition examination, or otherwise alter the deposition limitations, is expected to show good cause to justify such an order." *Withers v. eHarmony, Inc.*, 267 F.R.D. 316, 321 (C.D. Cal. 2010). Indeed, "[u]nder Fed.R.Civ.P. 26(c) a party seeking to limit discovery must make a 'strong showing'" for the need thereof. *Vestin Realty Mortg. II, Inc. v. Klaas*, CIV. 08CV2011 LAB, 2010 WL 4259946 (S.D. Cal. Oct. 25, 2010) (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990)). Anastasia has simply not shown sufficient need or good cause to limit the depositions in this matter, especially against the backdrop of its conduct in discovery to date.

### CONCLUSION

The Defendant must not be allowed to circumvent the clear language and intent of the Federal Rules of Civil Procedure, and this Court's order, in their bad faith attempt to further curtail and impede DMG's discovery efforts in this case. DMG respectfully requests that Defendant's *ex parte* request be denied.

Dated: August 22, 2011           Bruce A. Fields A.P.C.

By:/s/ Bruce A. Fields
Bruce A. Fields
Attorneys for Plaintiff
Dream Marriage Group, Inc.

# **DECLARATION OF BRUCE A. FIELDS**

I, Bruce A. Fields, declare:

1. I am an attorney at law duly licensed to practice before all the Courts of the State of California, including the United States District Court for the Central District of California. My corporation is attorney of record for Plaintiff in this matter. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto under oath.

2. On July 28, 2011, Plaintiff served three Notices of deposition of Defendant witnesses, including a deposition, pursuant to Federal Rule of Civil Procedure 30(b)(6), of the Person(s) Most Knowledgeable ("PMK") relative to thirty separate categories. The deposition notice also included twenty-three separate document requests. Said notices were attached to Defendant's moving papers (D.E. 65-2, 65-3, 65-4).

3. On August 15, 2011, Plaintiff sought an *ex parte* order to extend the PMK deposition an additional day. The court granted the request with the condition that Plaintiff's counsel not deviate from questioning the witness with respect to the categories referenced in the notice. The categories are specific to the Defendant.

4. The first deposition scheduled is of the witness Elena Sykes aka Elena Busedon dba Maine Webmasters. Ms. Sykes is subpoenaed to appear for deposition on August 29, 2011 in Bangor, Maine where she resides and where Defendant's primary business office is located.

5. Plaintiff's counsel is traveling from Los Angeles to Bangor to conduct the depositions, which requires two separate days of travel to and from said depositions. Upon receipt of the Court's Order regarding the PMK deposition on August 16, 2011, I booked and pre-paid for a round trip airfare ticket and hotel accommodations for travel on Sunday August 28, 2011 to arrive in Bangor, Maine on the same day. These arrangements cannot be changed without further costs and loss of funds expended. I am traveling on this day for the sole purpose of deposing Elena Sykes on August 29, 2011.

6.     On August 8, 2011, I sent an email to Defendant's counsel inquiring about the PMK depositions, inquiring as to the number of persons that would be designated. Defendant's counsel responded on August 10, 2011 that he believed there would one person but he was uncertain, however, Defendant's counsel never advised me that the PMK designee would be Elena Sykes until after this court issued its order on August 16, 2011. True and correct copies of the email communications referenced are attached hereto as Exhibit A.

7.     On August 17, 2011, Defendant's counsel for the first time advised me that Elena Sykes would be the designated PMK for defendant, requested DMG's counsel to provide a list of categories of inquiry intended for Ms. Sykes' individual deposition, and for the first time insisted that Ms. Sykes appearing for deposition for three days would be overly burdensome. Defendant's counsel contended that the PMK categories should encompass the entire inquiry of questioning.  I attempted to resolve the issue by offering to begin the PMK deposition to immediately follow Ms. Sykes deposition as an individual emphasizing that travel has been pre-paid and that the deposition must commence on August 29, 2011 as noticed. I also indicated that to limit the deposition of change the dates and timing would be prejudicial to DMG.

8.     This Court indicated in its Order of August 16, 2011 that DMG could not deviate beyond the PMK categories with respect to the PMK deposition. In several email communications with Defendant's counsel, I assured and confirmed that the deposition of Ms. Sykes as an individual on August 29, 2011 would only be as to subject matter outside the specific focus of the PMK categories, and that no PMK categories would be covered unless both counsel agreed otherwise. As a final measure to resolve this issue, DMG's counsel offered to begin the PMK deposition to immediately follow the subpoenaed deposition of Ms. Sykes on August 29, 2011, then to proceed with the PMK deposition in accord with the court's order of August 16, 2011, which provides up to (14) hours of on the record examination, if needed. True and correct copies of these email communications are attached hereto as Exhibit B.

9.    On or about February 4, 2011, DMG served on the Defendant Amended Initial Disclosures Pursuant to Rule 26 of the Federal Rules of Civil Procedure, identifying as individuals believed to have discoverable information both Elena Sykes (nee Besuden) concerning Anastasia International and the Maine Webmaster nameservers; representative(s) of Maine Webmasters. A true and correct copy of these Initial Disclosures is attached hereto as Exhibit C.

10.    On March 15, 2011, DMG served on the Defendant requests for production (198) and admission (144), and a set of interrogatories (13) (the "Discovery Requests"). These Discovery Requests attempted to glean much of the same information DMG now seeks testimony on from Anastasia, as an entity, pursuant to Fed. R. Civ. P. 30(b)(6), even though some questions not presented in the 30(b)(6) categories may be presented to Ms. Sykes. Defendant served mostly objections and otherwise provided evasive responses and has not produced documents that it agreed to produce. The inquiries directed to the 30(b)(6) deposition are separate from what DMG needs to learn from Elena Sykes as an individual.

11.    In a meet and confer on June 10, 2011, Defendant's counsel agreed to supplement responses and to further produce documents and has been silent as to when the further responses and document would be served. DMG is in the process of preparing a Joint Statement relative to the documents that have not been produced as well as the supplemental responses and further documents that Defendant agreed to produce and have not. Defendant's discovery responses were designated "Confidential." True and correct copies of the specific discovery requests and responses being submitted as examples are attached hereto as Exhibit D.

12.    There are areas of inquiry with respect to DMG's written discovery that DMG will pursue with Ms. Sykes that are not included within the PMK categories. Forcing Plaintiff's counsel to disclose the subjects of inquiry in advance will prejudice DMG relative to its case strategy and case preparation.

13. Further, Defendant's assertion that it is a small company is extremely misleading. Based on documentation which is being submitted herewith, the Defendant has "over 150" employees in several international office locations, one which appears to share offices with a company IT Online, located in Russia, a company held out to be a partner of Defendant.

14. Upon my information and belief, IT Online has been linked to activities including and not limited to spying and accessing DMG's internet website without authority, screen scraping and interfering with DMG's business relationships in Russia. IT Online additionally appears to be closely associated with Maine Webmasters.

15. While Maine Webmasters asserts that it is dissolved, also being submitted herewith are copies of published materials that present the appearance that it is still operating in some manner. Another area of inquiry with Ms. Sykes as an individual will be her personal involvement with companies believed to be involved with the activities that form the basis of DMG's claims in this case. Contrary to Defendant's assertion, this inquiry is extremely relevant.

16. DMG will be prejudiced if it is forced to change the schedule of the depositions as well as limit the depositions in any manner. It will further prejudice DMG's discovery efforts to pre-empt and limit the amount of time DMG has to conduct the depositions before the depositions actually commence.

17. I declare under the laws of the United States of America that this Declaration is true and correct, and was executed on August 22, 2011, in Los Angeles, California.


/s/
BRUCE A. FIELDS