Craig B. Bailey (State Bar No. 114410)
  cbailey@fulpat.com
James Juo (State Bar No. 193852)
  jjuo@fulpat.com
Scott Hansen (State Bar No. 164012)
  shansen@fulpat.com
FULWIDER PATTON LLP
Howard Hughes Center
6060 Center Drive, Tenth Floor
Los Angeles, California 90045
Telephone: (310) 824-5555
Facsimile: (310) 824-9696

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Dream Marriage Group, Inc., <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> Anastasia International, Inc., <br><br> Defendant and Counter-Complainant. | Case No. CV 10-5034 RSWL (FFMx) <br><br> ***EX PARTE* APPLICATION FOR ENTRY OF A PROTECTIVE ORDER LIMITING DISCOVERY OF NON-PARTY GOOGLE INC.** <br><br> Judge: Hon. Fredrick F. Mumm <br> Crtrm.: E - 9th Floor |

With this *Ex Parte* Application, Defendant Anastasia International, Inc. ("Anastasia") seeks a protective order requiring Plaintiff Dream Marriage Group, Inc. ("DMG") to withdraw certain information requested in a *Subpoena Duces Tecum* that DMG served on non-party Google Inc. ("Google"). Specifically, Anastasia seeks a protective order pursuant to Fed.R.Civ.P. 26(c)(1)(A) requiring DMG to withdraw Categories B and C of the Subpoena (attached as Exh. 1 hereto).

There is necessary good cause to file this *Ex Parte* Application because Categories B and C of the Subpoena call for confidential, commercially sensitive information that is outside the permissible scope of discovery in this action. Google recently indicated that it had planned to produce information responsive to the

Subpoena on October 17, 2011, which Google had extended from October 10, 2011 so that the parties could attempt to resolve the dispute (Declaration of Scott R. Hansen, Par. 3). Subsequently, DMG's counsel suddenly broke off settlement discussions and demanded by email letter of October 12, 2011 that Google <u>immediately</u> produce the information requested in the subpoena no later than October 13, 2011, leaving insufficient time to file a motion using the normal notice and briefing schedule under the Local Rules.

Counsel of the parties have conferred regarding this motion since September 30, 2011, but have not been able to resolve this matter. DMG's counsel is Bruce A. Fields (bfields@bfieldslaw.com) at 1801 Century Park East, 24th Floor, Los Angeles, CA 90067; 310-552-7832.

I.   BACKGROUND

   A.   The Parties And The Dispute In Litigation

Anastasia assists Western men in meeting and communicating with Russian and Eastern European women. Formed in 1993, Anastasia is one of the oldest and best known companies in the industry. Initially, the business model primarily involved the sale and distribution by mail of printed publications that contained profiles of Russian women submitted to Anastasia. Anastasia also provided services to facilitate communication with Russian women and tours of Russia. Most of the Russian women interested in meeting Western men use Russian or Ukrainian agencies ("Agencies") to assist them with getting their profiles distributed.

In 1997, Anastasia went online with the domain russianbrides.com, which offered online versions of the previously mailed publications. However, by 2001, the Anastasia business model radically changed by becoming more Internet-based, with both profiles and communications occurring online. During this time, Anastasia entered into agreements with a third party Russian entity as an independent contractor to provide services for this new business model, including the collection

of profiles and web content for websites at russianbrides.com and anastasiaweb.com, as well as interact with Russian and Ukrainian Agencies.

DMG is a smaller player in the online introduction business, and operates a website on the dream-marriage.com domain. The instant case appears to have been brought by DMG out of frustration at its inability to compete with Anastasia's independent contractors in Russia. DMG's Third Amended Complaint ("Complaint") (Exh. 2, Dkt. 42-1) alleges that Anastasia accessed DMG's website without authorization, and that certain websites linked to Anastasia had domain names that infringed DMG's registered trademark for "Dream-Marriage."

B. The Subpoena

Google is not a party to this action. DMG served a Rule 45 subpoena on Google issued by the Northern District of California. (Exhibit 1). The subpoena lists three categories of requested information, Categories A, B and C.

Category A relates to the websites identified in the Third Amended Complaint ("Complaint") (Exh. 2, Dkt. 42-1). Categories B and C, on the other hand, request confidential information that is far outside of the scope of the Complaint.

Category B calls for production of all records relating to two Google Analytics accounts. Google Analytics (GA) is a service offered by Google that gathers extensive information and generates detailed statistics about the visitors to a website. (Exh. 3). This information includes internet traffic and visitor information, and also may include e-commerce information regarding online sales. The requested Google Analytics accounts are not associated with any of the websites accused of infringement in DMG's Complaint .

Category C also is not limited to the domain names listed in DMG's Complaint. Moreover, Category C specifically requests all records relating to purchase of the term "DREAM MARRIAGE" for use as a Google AdWord . But there is no allegation in the Complaint pertaining to AdWords.

1  Google has objected to the subpoena. However, Google has informed
2  Anastasia that, absent a protective order, Google intends to provide responsive
3  information to DMG. DMG has now demanded that the production take place on
4  October 13, 2011. (Declaration of Scott R. Hansen, Par. 4).

II.  POINTS AND AUTHORITIES

A.  Legal Standards

The complaint outlines the scope of discovery. Discovery is not a license to conduct a fishing expedition for new causes of action, especially after Plaintiff has already amended the complaint multiple times.

A subpoena served on a third party seeking information that is not relevant to the action is improper. *See.,e.g.*, *Moon v. SCP Pool Corporation*, 232 F.R.D. 633 (C.D. Cal. 2005) ("[C]ourts have incorporated relevance as a factor when determining motions to quash a subpoena"), citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. 2003) and *Travelers Indem. Co. v. Metropolitan Life Insur. Col.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *Crosby v. City of New York,* 269 F.R.D. 267, 281 (S.D.N.Y. 2010)(where a party has subpoenaed a non-party, the burden of proof is on the requesting party to demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.)

Anastasia has standing to seek a protective order from this Court preventing the fishing expedition from going forward. *See., e.g., Lucent Technologies v. Gateway*, No. 07cv2000, 2008 WL 183637 at *2 (S.D. Cal. 2000) ("Under Rule 26(c)(1)(A) … any party may seek a protective order in the court where the action is pending requesting an order 'that the disclosure or discovery not be had.") The Court has broad discretion in limiting overly broad discovery. "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Charles Alan Wright, Arthur R. Miller, Richard L. Marcus,

8 Fed. Prac. & Proc. Civ. § 2008.1 (3d ed.) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision…
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

*See* Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable <u>only if it is relevant to the claims or defenses of the case</u> or, upon a showing of good cause, to the subject matter of the case. *Id.; see also Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 635 (D. Minn. 2000) ("[T]he threshold requirement of discoverability is whether the information sought is 'relevant to the subject matter involved in the pending action.' ") (quoting *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1326 (8th Cir.1986)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.,* 464 F.2d 986, 994 (8th Cir.1972)). Limiting discovery to relevant information is a necessary restriction on otherwise liberal discovery rules. *See, e.g., Murphy v. Kmart*, 255 F.R.D. 497, 501 (D.S.D. 2009).

When discovery is sought from third parties, a protective order may be more easily obtained. *See, e.g., Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir 1980)("restriction may be broader when a nonparty is the target of discovery".).

B.     Category B Seeks Information Irrelevant to Any Claim in This Action

Unlike Category A which is directed to the domains that DMG actually accused of trademark infringement in its Complaint, DMG's Category B is not limited to the domain names accused of infringing in the Complaint. Neither of the two Google Analytics accounts about which DMG seeks information in Category B relate in any way to the infringement allegations in the Complaint. (Exh. 1). The domain names associated with the Google Analytics accounts at issue are listed in

Exhibits 4 and 5 (bottom of page 2 to top of page 3 on both exhibits), which reflect search results from the website Statsie.com which is a tool for website analysis and statistics. None of the domains associated with the identified Google Analytics accounts are accused in any cause of action in the Complaint.

As such, DMG is on a fishing expedition looking at detailed internet traffic, visitor, and e-commerce information concerning internet domains and websites of a competitor not at issue in this lawsuit. This sensitive, non-public commercial information is the lifeblood of a website, and constitutes valuable trade secrets that deserve protection from unnecessary disclosure. As Category B seeks information that falls far outside the causes of action alleged in the Complaint, discovery should not be had.

Anastasia has made a reasonable offer of compromise with respect to Category B (Exh. 6), which DMG rejected. Anastasia therefore seeks a Protective Order from the Court ordering DMG to withdraw Category B from its subpoena on Google.

C. Category C Seeks Information Irrelevant to Any Claim In This Action, And Would Ensnare Third Party Purchasers of Google AdWords

There is no allegation in the Complaint regarding the use of AdWords—yet Category C requests "all records" relating to any purchase of the term "DREAM MARRIAGE" for use as a Google AdWord. Furthermore, Category C expressly states that it is not limited to any of the domains identified in the Complaint. Information about payments to Google, including the identity of purchasers and details of credit cards used to purchase "DREAM MARRIAGE" as an AdWord, is specifically requested in Category C as well.

On its face, Category C is overbroad. There is no allegation in the Complaint regarding the use of AdWords. Thus, DMG appears to be fishing for a new cause of action—an expedition that is contrary to the rules of discovery. Fed. R. Civ. P.

26(b)(1) advisory committee's note (stating that litigants "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

Furthermore, Google's practice in responding to requests regarding Adwords is to produce a spreadsheet containing a list of all keywords purchased by its customer and traffic information. Production of such information would provide a roadmap for a competitor marketing strategy and the effectiveness of keywords it may choose to purchase, irrelevant to any issue in this action. Such commercially sensitive data of internet companies requires the utmost protection.

Anastasia has made a reasonable offer of compromise with respect to Category C (Exh. 6), which DMG rejected. Anastasia therefore seeks a Protective Order requiring DMG to withdraw Category C from its subpoena on Google.

III. CONCLUSION

Although Category A of the subpoena relates to websites at issue in the Complaint, Categories B and C do not. Indeed, Categories B and C are overbroad and seek information irrelevant to the DMG's claims in this action. Pursuant to Fed. R. Civ. P. 26(c)(1)(A), the Court should enter a protective order that discovery not be had with respect to Categories B and C of DMG's Subpoena.

DATED: October 13, 2011    Respectfully submitted,

FULWIDER PATTON LLP

By:    /Scott R. Hansen/
       Craig B. Bailey
       James Juo
       Scott R. Hansen
       Attorneys for Defendant
       Anastasia International, Inc.