Bruce A. Fields (102426)
bfields@bfieldslaw.com
Bruce A. Fields A.P.C.
1801 Century Park East, 24th Floor
Los Angeles, California 90067
Telephone: 310-552-7832
Facsimile: 800-279-4830

Attorneys for Plaintiff
Dream Marriage Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Dream Marriage Group, Inc., | Case no. CV 10-5034 RSWL (FFMx) |
|---|---|
| Plaintiff, | **Plaintiff's Response to Defendant's Supplemental Memorandum in Support of Motion for Protective Order Against Deposition of Alexey Eremin** |
| v. | |
| Anastasia International, Inc. et al., | |
| Defendants. | Date: January 31, 2012<br>Time: 10:00 a.m.<br>Judge: Hon. Frederick F. Mumm |
| And related cross-action | Discovery Cutoff: March 23, 2012<br>Pretrial Conference: October 16, 2012<br>Trial: December 4, 2012 |

Plaintiff Dream Marriage Group, Inc. ("DMG") respectfully requests the Court consider this brief response to the Supplemental Memorandum (D.E. 91) filed 10:51 p.m. on December 27 by Defendant Anastasia International, Inc. ("AI"). DMG feels it necessary to submit this Response to address the mischaracterizations presented by Defendant in its Supplemental Memorandum.

I. **EREMIN'S KNOWLEDGE**

Defendant claims that Alexey Eremin ("Eremin") is not "the person most knowledgeable about the issues in this litigation." (D.E. 91, 2:3-5.) This is in spite of the fact that Mr. Eremin was the liaison for AI for all its activities in the Russian

Federation (and/or is) in such close proximity to the offices of IT Online as to routinely collaborate orally with IT-Online management (excerpts from the transcript of the deposition of Elena Sykes, filed under seal as Exhibit H to the Declaration of James Juo in Support of Defendant's Supplemental Memorandum for Protective Order ("Juo Decl."), D.E. 91-1 ("Sykes Tr."), 258:22-259:3). (IT Online is the "Moscow Entity" with whom the Defendant is inextricably intertwined, and which has been conducting the activities at the core of this lawsuit on Defendant's behalf and/or at Defendant's direction.) Again, Mr. Eremin was, by Defendant's own testimony, AI's liaison with the Moscow Entity, and keeps (or kept) his office at IT Online's Moscow offices. (260:15-19.)

Too, DMG may never know the extent of Mr. Eremin's knowledge, as Elena Sykes ("Sykes"), the Defendant's designated witness, "didn't think [she] was in any need to get information out of" Eremin, as "Eremin was going to have his own deposition." (Sykes Tr., 259:11-13.) This in spite of her "well-established ... affirmative obligation to educate [her]self." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008). Indeed, when pressed as to what knowledge Mr. Eremin might have, Ms. Sykes protested "you'll have to ask him." (261:6-7.)

Defendant offers only hearsay (i.e., what Ms. Sykes said, regarding what Mr. Eremin said) in support of its proposition that Eremin lacked knowledge. (D.E. 91, 2:21-24.) Too, contrary to Defendant's counsel's representation that Ms. Sykes "was not involved in the daily operation of Anastasia" (D.E. 91, 2:24-25), Ms. Sykes in fact testified as to what she intended Mr. Eremin's role would be vis-à-vis the "business" of the Moscow Entity. (Sykes Tr., 262:1-5.)

Additionally, though Defendant repeats variations of the statement that Eremin "did not become an employee of [Defendant] until long after DMG's complaint was filed in July 2010" (D.E. 91, 2:15-16; 3:4-5; 3:14-15), that fact, even if so, is immaterial. DMG has always (D.E. 1, ¶¶ 18-19, 43-44; D.E. 52, ¶¶ 23-24, 44-45, 55-

56, 77-78, etc.) maintained that the Defendant's wrongful activity was ongoing, and continued throughout Eremin's tenure as Defendant's President, Treasurer, and Secretary.

## II. EREMIN'S HEALTH

The medical records submitted relative to Mr. Eremin condition are hearsay and unsubstantiated. Regardless, DMG is not without sympathy to Mr. Eremin's medical situation, if it proves genuine and if the recommendations of his treating physician(s) are legitimate constraints on his advisable level of activity[1]. DMG does find it somewhat suspicious, however, that as recently as late August (contrary to Defendant's assertion that Mr. Eremin "has been in ill health for some time" (D.E. 91, 1:13)), Defendant raised no concerns about Mr. Eremin's health, but instead was concerned more with his convenience and travel visa (Declaration of Bruce Fields ("Fields Decl.") ¶ 3 and page 1 of Exhibit 11 thereto), that the airline used to bring Eremin to Maine for his deposition not be Aeroflot (Id., p. 3), etc.

Defendant cannot deny the timing of the revelation of Mr. Eremin's purported health complications, and his departure as AI's President, were at least fortuitous.

DMG would respectfully request the Court fashion an appropriate solution that balances DMG's legitimate need for discovery together with any legitimate health issues Mr. Eremin may need accommodated, but urges that the discovery take place.

## III. EREMIN IS SUBJECT TO DEPOSITION BY NOTICE

Defendant does not dispute that, at the time Mr. Eremin's deposition was noticed on July 28, 2011 (D.E. 82, ¶ 8), he was an (indeed, the only) officer of the Defendant, and thus subject to deposition by notice. Defendant seems to believe, however, that it can use its tactics of delay and evasion as a shield, to now thwart DMG in obtaining legitimately discoverable information. It cannot.

---

[1] DMG asks the Court to take notice of the fact that functional classification 2 (Juo Decl., Ex. G, p. 2) in pulmonary arterial hypertension, results in a *slight* limitation of activity; see, e.g., The Classification of Pulmonary Arterial Hypertension, Dr. Michael A. Mathier, MD, FACC, *available at* http://www.medscape.org/viewarticle/544175 ; if Mr. Eremin's health condition proves the only factor precluding his attendance at even a video deposition, perhaps the Court will permit Plaintiff to have an independent medical exam performed at a location convenient to Mr. Eremin?

   Defendant relies on a single, unsupported sentence (following a lengthy, citation-heavy support for the court's conclusion that "[u]nless a party or witness files a motion for a protective order and seeks *and obtains* a stay *prior* to the deposition, a party or witness has no basis to refuse to attend a properly noticed deposition," *In re Toys R Us Litig.*, No. 081980, 2010 WL 4942645, at *3 (C.D. Cal. July 29, 2010) (emphasis added)) for its proposition that merely objecting to a noticed deposition and *seeking* a protective order will excuse its refusal to produce Eremin for his properly noticed deposition. (D.E. 91, 5:5-8.) In fact, as the court there properly noted, where, as here, a deposition has been properly noticed, the Defendant has no excuse for not producing its officer for deposition, or *obtaining* a stay prior to the date noticed for the deposition.

   Further, as previously highlighted by DMG, *Carpenter* notes that "[c]ourts have limited the decision in *Loew's* to stand for the proposition that a witness may be considered to be a managing agent of a corporation after his resignation only if he still exercises some control or judgment over the daily affairs of the corporation *or* if the resignation was effected in order to avoid the possibility that the witness could be deposed through service of a deposition notice." *Carpenter v. Forest Meadows Owners Ass'n*, 1:09-CV-01918-JLT, 2011 WL 3207778 (E.D. Cal. July 27, 2011) (internal quotations omitted; emphasis added). Too, Defendant ignores the subtleties of the court's holding in *Use Techno*, which notes only that "the balance in favor of the examining party is *less strong* where the proposed deponent is not an employee of the opponent…" *Use Techno Corp. v. Kenko USA, Inc.*, No. 06-02754, 2007 WL 2403556 (N.D. Cal. Aug. 20, 2007) (internal quote marks and citation omitted; emphasis added). Less strong, but the balance still weighs in favor of DMG.

   DMG has, additionally, met its burden in establishing (inasmuch as it is able to, given Defendant's deficient and dilatory responses to DMG's deposition and other discovery efforts) a close question regarding Eremin's current status and/or the circumstances under which he resigned. To whit, earlier dates were, without

BH8272.1
1002-30718

4            CV 10-5034-RSWL (FFMx)
RESPONSE TO SUPPLEMENTAL MEMORANDUM

explanation, "not convenient," but October 25 was offered (Fields Decl., Ex. 11 p. 1). Plaintiff was then shocked to learn that AI had been sold, in early September, to an off-shore entity; coincidentally, Mr. Eremin tendered his resignation on October 19. Defendant has, in contrast, provided no evidence properly before this Court as to Eremin's conduct post-resignation, or the circumstances that prompted such resignation. Counsel for Defendant states, without support, that it is purportedly "not uncommon for a corporate officer to resign for ill health or as part of a change in corporate ownership" (D.E. 91, 1:15-16), but even if so, Defendant has offered no facts to establish that that is indeed what happened here. This is a question that must be resolved in DMG's favor.

     Too, even if Defendant is technically correct in that Eremin is no longer subject to deposition upon notice, to require DMG to now embark on the lengthy and almost certain to be ultimately fruitless[2] process of seeking deposition by subpoena in the Russian Federation, would be to "elevate form over substance." *Watson v. Albin*, C-06-07767 RMW, 2008 WL 1702062 (N.D. Cal. Apr. 10, 2008) (granting a motion to compel a deposition on notice, "[e]ven though a subpoena was technically required," where there was justified reliance on the representations by the other party and where the opponent would not be prejudiced, having had months of notice). Here, Plaintiff served a timely notice of deposition and Defendant at all times represented that Mr. Eremin would be produced for deposition on a mutually convenient date. Plaintiff justifiably relied on Defendant's representation and Defendant should be estopped from asserting its hypertechnical notice argument and its claimed lack of an obligation to produce Mr. Eremin for deposition. To find in favor of Defendant in this regard would support Defendant's continuous pattern of averting Plaintiff's efforts and rights to acquire discovery in this case.

## IV. CONCLUSION

     For Defendant to claim that "neither party was unduly prejudiced by the

---

[2] See, e.g., the Declaration of Edward A. Betancourt of the State Department, *available at* http://www.state.gov/documents/organization/98424.pdf

deponent's non-appearance" (D.E. 91, 5:12-15) borders on the absurd. Plaintiff DMG has well established the deficiency of Defendant's 30(b)(6) designated witness and the availability of highly relevant information known only to Eremin that, in Defendant's designated witness' own words, DMG will "have to ask him." (Sykes Tr., 261:6-7.) DMG would like nothing more, and accordingly respectfully requests this Court **deny** the Defendant's untimely motion for a protective order.

Dated this 29th day of December, 2011.

Respectfully submitted,

BRUCE A. FIELDS, APC

By: /s/ _____
Bruce Fields, Esq.
Attorneys for Plaintiff