Craig B. Bailey (State Bar No. 114,410)
  cbailey@fulpat.com
James Juo (State Bar No. 193,852)
  jjuo@fulpat.com
Scott R. Hansen (State Bar No. 164012)
  shansen@fulpat.com
FULWIDER PATTON LLP
Howard Hughes Center
6060 Center Drive, Tenth Floor
Los Angeles, California 90045
Telephone: (310) 824-5555
Facsimile: (310) 824-9696

Attorneys for Defendant Anastasia International, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAM MARRIAGE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANASTASIA INTERNATIONAL, INC., <br><br> Defendant. <br> _____ <br> And Related Counterclaims | CASE NO. 10 CV 5034 RSWL (FFMx) <br><br> DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY <br><br> Judge: Hon. Ronald S.W. Lew <br> Date: June 27, 2012 <br> Time: 10:00 a.m. |

599134.1

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY ..................... 1

    A.  DMG's Proposed Fourth Amended Complaint ..................................... 3

        1.  Addition of Dream World Partners As A Plaintiff ...................... 3

        2.  Addition of Five Foreign Defendants ........................................... 3

        3.  Addition of California Tortious Interference Claim ..................... 3

        4.  Supplementation of Complaint ...................................................... 4

III.  LEGAL STANDARDS TO AMEND AND EXTEND DISCOVERY ........... 4

IV.  ARGUMENT ......................................................................................... 6

    A.  Plaintiff DMG Unduly Delayed In Seeking Leave ............................... 6

        1.  DMG Improperly Blames Counsel For Its Own Inaction ........... 6

        2.  DMG Improperly Blames Anastasia As Well ............................. 8

        3.  No Excuse for the Delayed Exclusivity Claims .......................... 9

        4.  DMG's Supplementation Relies On Facts Not Disclosed By DMG In Discovery .............................................................. 9

    B.  DMG's Proposed Amendments Are Futile ........................................ 10

        1.  Adding Dream World Partners As A Plaintiff ........................... 10

        2.  Adding A California Claim For Tortious Interference .............. 12

    C.  DMG Has Acted In Bad Faith .......................................................... 13

        1.  DMG's Pretext For Adding Partners As A New Plaintiff ......... 13

        2.  Instead Of Producing Documents In Discovery, DMG Withheld Documents For Its Amended Complaint ................... 15

    D.  Anastasia Will Be Prejudiced By The Amendment ............................ 15

V.  CONCLUSION .................................................................................... 19

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

i

# Table of Authorities

Page(s)

**FEDERAL CASES**

*Acri v. Int'l Ass'n of Machinists*
   781 F.2d 1393 (9th Cir. 1986) ................................................................. 9

*AmerisourceBergen Corp. v. Dialysist W., Inc.*
   465 F.3d 946 (9th Cir. 2006) ..................................................... 5, 10, 18

*Cafasso v. General Dynamics C4 Systems, Inc.*
   637 F.3d 1047 (9th Cir. 2011) ................................................................ 4

*DCD Programs, Ltd. v. Leighton*
   833 F.2d 183 (9th Cir. 1987) ................................................................. 5

*Harris v. Vector Marketing Corp.*
   No. 08-5198, 2009 WL 3710696 (N.D. Cal. 2009) ........................... 17

*Hoot Winc, LLC v. RSM McGladrey Financial Process Outsourcing, LLC*
   No. 08-1559, 2011 WL 718662 (S.D. Cal. 2011) .............................. 11

*IXYS Corp. v. Advanced Power Tech., Inc.*
   2004 WL 135861 (N.D. Cal. 2004) .................................................... 17

*Jackson v. Bank of Hawaii*
   902 F.2d 1385 (9th Cir. 1990) ........................................................ 8, 10

*Johnson v. Buckley*
   356 F.3d 1067 (9th Cir.2004) .............................................................. 4

*Johnson v. Hewlett-Packard Co.*
   809 F. Supp. 2d 1114 (N.D. Cal. 2011) ......................................... 5, 18

*Johnson v. Mammoth Recreations, Inc.*
   975 F.2d 604 (9th Cir. 1992) ................................................................ 5

*Kaplan v. Rose*
   49 F.3d 1363 (9th Cir. 1994) ......................................................... 9, 17

*McClain v. Am. Econ. Ins. Co.*
   424 F.3d 728 (8th Cir. 2005) .............................................................. 11

ii

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*
   No. 10-02483, 2011 WL 4407560 (E.D. Cal. Sept. 22, 2011) .......................... 11

*Paulsen v. CNF, Inc.*
   559 F.3d 1061 (9th Cir. 2009) ............................................................... 12

*R.M.B. Electrostat, Inc. v. Lectra Trading, A.G.*
   No. 82-1844, 1983 WL 13711 (E.D. Pa. Jan. 17, 1983) ................................... 16

*Spine Imaging MRI, LLC v. Liberty Mutual Insurance Co.*
   743 F. Supp. 2d 1034 (D. Minn. 2010) ...................................................... 11

*Texaco, Inc. v. Ponsoldt*
   939 F.2d 794 (9th Cir. 1991) .........................................................5, 9, 10

*Timbisha Shoshone Tribe v. Kennedy*
   267 F.R.D. 333 (E.D. Cal. 2010) ............................................................. 5

*United States v. Corinthian Colleges*
   655 F.3d 984 (9th Cir. 2011) ................................................................. 4

*Wells Fargo Bank, N.A. v. Renz*
   No. 08-02561, 2010 WL 2867615 (N.D. Cal. July 20, 2010) ....................5, 9, 10

**FEDERAL STATUTES**

Fed. R. Civ. P. 4 ............................................................................... 16

Fed. R. Civ. P. 12(b)(6) ................................................................. 11, 13

Fed. R. Civ. P. 15 .......................................................................... 4, 16

Fed. R. Civ. P. 16 ............................................................................... 5

**TREATIES**

*Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters*,
   20 U.S.T. 361, 658 U.N.T.S. 163, T.I.A.S. No. 6638 ....................................... 16

**OTHER AUTHORITIES**

Mark R. Joelson, *Litigating International Commercial Disputes, by Lawrence W. Newman and David Zaslowsky. St. Paul: West Publishing Co., 1996*
   30 Geo. Wash. J. Int'l L. & Econ. 159, 172 (1996) ...................................... 16

599134.1

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kenneth C. Miller, *The Practical Aspects of Litigating Against Foreign Corporations*, 54 J. Air L. & Com. 123, 147 (1988) ......................................... 16

## I.   INTRODUCTION

Defendant Anastasia International, Inc. ("Defendant" or "Anastasia") submits this memorandum in opposition to the motion of plaintiff Dream Marriage Group, Inc. ("Plaintiff" or "DMG") to file a **fourth** amended complaint two months before the close of fact discovery.  The proposed complaint, among other things, adds a new plaintiff, five foreign defendants, and a new cause of action dealing with contractual relations among numerous foreign non-parties that took place exclusively in Russia and the Ukraine.

DMG acknowledges that allowing this amendment will delay this case, and has asked for a **nine-month** extension of the Scheduling Order.  However, DMG's estimate is unrealistic, as the addition of the new foreign parties and necessary overseas discovery will likely delay this case for substantially more than a year. DMG has known about these new parties and claims for over a year, and has delayed seeking this amendment to the eleventh hour.

Additionally, DMG seeks to add a new party plaintiff, to "correct" its own false allegation – made in four successive pleadings – that its own principal place of business is in California. DMG's claim of excusable ignorance as to the location of its own operations is preposterous and cannot justify its tardy effort to "borrow" the California presence of a new plaintiff to support its claims under California law. Moreover, as demonstrated below, the proposed new pleading fails to allege facts sufficient to support standing for this new plaintiff.

After two years, it is simply too late for DMG to make such fundamental changes in the theory and scope of its case. DMG's proposed amendment will unfairly cause Anastasia unnecessary expense and delay and should be denied.

## II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff DMG alleges it is the owner of the dream-marriage.com websites. These websites offer international dating services to men worldwide.  DMG is a Nevada corporation.  It alleged in its initial complaint and in three amended

complaints that it had its principal place of business in California.  It now states that this allegation was mistaken, concedes that its principal place of business is not in California and that it is not "present" in California, but inexplicably fails to identify where, in fact, the principal place of business is located.  [Dkt. 179 (DMG Memorandum at 11); Dkt. 180-1 (Proposed Complaint at ¶ 8)].

Defendant Anastasia is a Kentucky corporation which has been in the international dating industry for nearly twenty years.  Juo Exh. M (Sykes Depo. at 52).  Anastasia started out selling mail order catalogs of women interested in meeting United States men. Juo Exh. M (Sykes Depo. at 147-150).  Most of these women were located in Russia and the Ukraine. *Id*.  About ten years ago one of Anastasia's Russian business associates suggested that Anastasia use the internet to deliver and market its services.  *Id*.  Anastasia was not "web savvy" and decided to subcontract out the internet services to a Russian company, Stolitza, LLC.  *Id*. Stolitza and other Russian companies "ran with this idea" and created the international dating website today known as Anastasiadate.com, and handled the relationships with women and agencies located in Ukraine and Russia.  *Id*.  The business of the websites eventually dwarfed that of the mail order catalogs, and relationship evolved so that Anastasia is now effectively a service provider for the Russian websites.  *Id*.  Its American staff of five handles billing and customer service in the United States.  Juo Exh. M (Sykes Depo. at 12 and 24).  By contrast, the Russian entities employ over 200 people to run the websites and handle relationships with the Russian and Ukrainian agencies and women seeking dates. Juo Exh. M (Sykes Depo. at 132).

In this action DMG has alleged that defendant Anastasia infringed the DREAM-MARRIAGE trademark under California and federal law by using similar names for websites, and violated the Computer Fraud Act by engaging in bot searches, or "screen scraping," of the dream-marriage.com websites.

2

DMG's complaint has already been amended three times (the last time, a comprehensive redraft by DMG's current counsel) and the scheduling order has been extended twice (for a total of eight additional months of fact discovery). The current scheduling order places the end of fact discovery at July 31, 2012. [Dkt. 119].

### A.    DMG's Proposed Fourth Amended Complaint

Plaintiff DMG now proposes to amend its complaint in four substantive ways:

#### 1.    Addition of Dream World Partners As A Plaintiff

DMG first proposes to add Dream World Partners, Inc. ("Partners") as a plaintiff.  According to paragraph 9 of the proposed Fourth Amended Complaint [Dkt. 180-1], Partners is a Nevada corporation with its principal place of business in California.  Partners claims to have managed the dream-marriage.com website and provided operational services to DMG since 2009.  The proposed amended complaint further alleges that "under its management agreement with DMG, [Partners] has the right to pursue and assert all claims that violate DMG's trademark rights and rights associated with DMG's business." *Id.*

#### 2.    Addition of Five Foreign Defendants

DMG also proposes to add five foreign business entities as defendants:  four Russian entities, Stolitza, LLC, IT Online Group, Pay Online System and Web Service, LLC, and one British Virgin Islands company, Lookintom Consolidated Ltd.  The fourth amended complaint alleges that these companies participated in the wrongful acts of Anastasia.

#### 3.    Addition of California Tortious Interference Claim

DMG's Fourth Amended Complaint further proposes to add a new cause of action (Count 8) alleging that all of the defendants tortiously interfered with DMG's business relationships by using improper means to induce the Russian and Ukrainian agencies that place women's profiles on international dating websites, as well as the women themselves, to deal exclusively with defendants.  [Dkt. 180-1 at ¶¶ 355-362

and 430-433].  Specifically, the Fourth Amended Complaint alleges that defendants wrongfully enforced a contract clause between a foreign non-party, Kirpton, Inc., and the Russian and Ukrainian agencies which allegedly did not in fact provide exclusivity, and refused to pay commissions to agencies which did not grant defendants exclusivity.  *Id*. at ¶¶ 360–361.

The Fourth Amended Complaint thus seeks to vastly expand the scope of the case.  This case presently is a dispute between two American companies about whether the American defendant violated DMG's trademarks or was involved in "screen scraping" the dream-marriage.com website.  DMG now proposes that this case be expanded to determine whether improper means were used to have numerous Russian and East European entities and individuals deal exclusively with a foreign company (Kirpton)—where none of them are parties to this action.

### 4.    Supplementation of Complaint

DMG also proposes to supplement the complaint to allege additional acts of "screen scraping," which allegedly continued through March 2012.  See Dkt. 180-1 at ¶¶ 45-353.

## III.   LEGAL STANDARDS TO AMEND AND EXTEND DISCOVERY

DMG must meet two separate standards to amend the complaint.  First, it must meet the standard for amendment of pleadings set forth in Rule 15.  Leave to amend is freely granted but that freedom is not absolute.  A court may deny leave to amend if there is (1) undue delay, (2) futility of amendment, (3) bad faith, or (4) prejudice to the opponent.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); see also *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir.2004) ("Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.").  In addition, the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.  *Cafasso v. General*

599134.1

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

4

1  *Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011); *DCD Programs,*

2  *Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("a district court's discretion

3  over amendments is especially broad 'where the court has already given a plaintiff

4  one or more opportunities to amend his complaint'" (quoting *Mir v. Fosburg*, 646

5  F.2d 342 (9th Cir.1980)).

6      A party unduly delays in seeking an amendment by failing to seek

7  amendment reasonably promptly after it "knew or should have known" that

8  amendment was called for.  *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114,

9  1120 (N.D. Cal. 2011) ) (quoting *AmerisourceBergen Corp. v. Dialysist W., Inc.*,

10  465 F.3d 946, 953 (9th Cir. 2006)).  The Ninth Circuit has held that "an eight month

11  delay between the time of obtaining a relevant fact and seeking a leave to amend is

12  unreasonable." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991); see also

13  *AmerisourceBergen*, 465 F.3d at 953 (upholding denial of leave to amend where

14  plaintiff, never provided a satisfactory explanation why it sought to change its

15  litigation theory 12 months into the litigation).  A lack of explanation for the delay

16  may support a conclusion that the movant "was not diligent, which warrants denial

17  of his motion." *Wells Fargo Bank, N.A. v. Renz*, No. 08-02561, 2010 WL 2867615,

18  at *3 (N.D. Cal. July 20, 2010) (five month delay).

19      Moreover, where granting leave to amend requires an amendment of the

20  scheduling order, as plaintiff concedes here, the plaintiff must also demonstrate that

21  good cause exists for the amendment under Rule 16.  *Johnson v. Mammoth*

22  *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  There is no presumption of

23  liberality in granting a request to amend a scheduling order, and the moving party

24  bears the burden of demonstrating good cause for the amendment. *Timbisha*

25  *Shoshone Tribe v. Kennedy*, 267 F.R.D. 333, 335 (E.D. Cal. 2010).

26

27

28

## IV.   ARGUMENT

### A.   Plaintiff DMG Unduly Delayed In Seeking Leave

As demonstrated below, DMG unduly delayed seeking the amendments contained in its proposed pleading. It knew about all of the potential parties and claims now being raised for the first time in its Fourth Amended Complaint long ago.

- At all times since the Original Complaint, DMG has known that its allegation of a principal place of business in California was false. By its own admission, management operations were transferred from DMG to Partners in 2010, and employees of Partners were responsible for overseeing this litigation, including the drafting of DMG's original complaint and the three subsequent amendments.
- DMG has admitted that it learned of the alleged exclusivity activities which form the basis for its tortious interference claim, in May 2010, before the filing of the Original Complaint.
- The alleged continuation of the screen scraping activities from 2010 to 2012 would have been manifest on DMG's weblogs, which DMG's own declarant, Andy Schmitt admitted he failed to review until April 2012, for the amended complaint.  DMG has yet to comply with requests to produce these computer files to Anastasia.
- By its own admission, DMG could have sought leave to amend after Anastasia's 30(b)(6) deposition in October 2011, and has been aware of all of the proposed new defendants since May 2011 or earlier.

#### 1.   DMG Improperly Blames Counsel For Its Own Inaction

DMG tries to excuse its inactivity by blaming others.  DMG first blames its false allegation of a California presence and other errors in its Original Complaint on the alleged incompetence of its original counsel (who DMG concedes was

Partners' General Counsel as well as litigation counsel for DMG) and the inability of unidentified key personnel to speak English.  Yet it is undisputed (i) that the allegedly incompetent attorney left in late September 2010 (Bailey Decl. at ¶ 7) and was replaced by Bruce Fields over 18 months ago;[1] (ii) that Partners' current Corporate Counsel entered this action as counsel of record for DMG in December, 2010, 17 months ago; and (iii) that Shyrah Butcher, Vice President of Corporate Affairs for DMG, admits to having supervised DMG's legal affairs and outside counsel "at all relevant times." What DMG omits from this tale is that Shyrah Butcher is also Vice President of <u>Partners</u>, and has been responsible for the day-to-day operations of <u>both DMG and Partners</u> since at least December 2009.  Juo Exh. F (DMG's Response to Interrogatory No. 14, as verified by Shyrah Butcher); *see also* [Dkt. 150-1 at ¶ 2].

Blaming a prior counsel who exited this case in September 2010 for the nearly two year delay in curing a basic misrepresentation and adding Partners as a new plaintiff is clearly a pretext. Moreover, the alleged fact that unidentified key employees do not speak fluent English is irrelevant.  Both Mr. Harshman and Ms. Butcher, Partners' Vice President, are fluent. Both have been on notice of the false representation as to DMG's California presence for at least 17 months.  It defies credibility that they were not aware of it sooner, especially Ms. Butcher, who does not plead any lack of knowledge as to the activities of DMG and its relationship with Partners, who holds the same corporate office for both DMG and Partners, and who is the point person for both in this litigation.

Whether DMG's actions were due to gross neglect or conscious obfuscation, neither is an excuse for delaying the amendment until now.

---

[1] Mr. Fields was responsible for preparation of the Third Amended complaint, which was a thorough and complete re-write of DMG's prior pleadings. Bailey Decl. at ¶¶ 8–18.

1

### 2.    DMG Improperly Blames Anastasia As Well

2      DMG also blames Anastasia's alleged obstruction of discovery for its failure

3 to learn about the proposed new foreign defendants.  Anastasia will not rehash the

4 discovery disputes which are currently pending before Magistrate Judge Mumm.[2]

5 These disputes are irrelevant because it is undisputed that DMG knew of IT Online

6 and Web Service LLC in 2010;[3] and Stolitza,[4] Lookintom, and Pay Online[5] by mid-

7 2011.

8      DMG argues that the Court can ignore DMG's prior knowledge of these

9 foreign companies because it did not realize how the pieces fit together until

10 Anastasia's Rule 30(b)(6) deposition in October 26, 2011.[6]  Thus, even under

11 DMG's best scenario, DMG had sufficient information to add all of these foreign

12 companies as defendants to its complaint in October 2011, but did not act to do so

13 until May 2012 over seven months later.  DMG has provided no explanation for the

14 delay in seeking to add these foreign defendants for the past seven months.  The

15 Ninth Circuit has affirmed denials of leave to amend for similar delays. *Jackson v.*

16 _____

17 [2] While there have been discovery disputes, Anastasia's objections have been made
18 in good faith.  For example, in connection with DMG's motion to compel further
deposition testimony and document production, the Court found that "[u]nder these
19 circumstances, the Court cannot find that defendant failed to properly brief the
30(b)(6) witness" [Dkt. 115 at 3].  The Court also found DMG's document requests
20 to be "overly broad and too vague." *Id.*

21 [3] DMG produced the documents it now relies upon to link IT Online and Web
22 Service LLC to the alleged screen scraping in November 2010 (Schmitt Exh. F); and
listed IT Online in DMG's Initial Disclosure of February 4, 2011 (Juo Exh. A).

23 [4] Anastasia disclosed that Stolitza, LLC was the operator of the Anastasia websites
24 in its response to Plaintiff's Interrogatory No. 6 on May 18, 2011.  Juo Exh. N.

25 [5] DMG obtained the documents it now relies upon to implicate Lookintom and Pay
26 Online in May 2011 from third party subpoenas that were served by DMG.  Schmitt
Exh. B.

27 [6] DMG, however, did not ask a single question about Pay Online during Anastasia's
28 30(b)(6) deposition.

8

1  *Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (affirming denial of leave to

2  amend based on a delay from October 1987 to May 1988); *Texaco, Inc. v. Ponsoldt*,

3  939 F.2d 794, 799 (9th Cir. 1991) (noting "an eight month delay between the time of

4  obtaining a relevant fact and seeking a leave to amend is unreasonable."); *see also*

5  *Renz*, 2010 WL 2867615, at *3 (leave to amend denied based on an unexplained five

6  month delay).

### 3. No Excuse for the Delayed Exclusivity Claims

8  DMG has not attempted to explain its delay in seeking to challenge

9  defendants' alleged actions to enforce exclusivity, and the record shows that it has

10  no excuse. Kirpton's efforts to enforce its exclusive contracts with the dating

11  agencies in Russia and Ukraine started in 2010, and DMG acknowledges that its

12  agencies informed them of these efforts in April 2010. Dkt. 180-1 at ¶ 360. DMG

13  has no excuse for waiting over two years to seek to add this claim to this case.

14  "[L]ate amendments to assert new theories are not reviewed favorably when

15  the facts and the theory have been known to the party seeking amendment since the

16  inception of the cause of action." *Acri v. Int'l Ass'n of Machinists,* 781 F.2d 1393,

17  1398 (9th Cir. 1986); *see also Kaplan*, 49 F.3d at 1370 (citing *Acri*).

### 4. DMG's Supplementation Relies On Facts Not Disclosed By DMG In Discovery

20  DMG also wants to supplement its complaint to add screen scraping

21  allegations continuing through to March 2012. DMG acknowledges that it created

22  contemporaneous computer logs of each alleged attempt to screen scrape, so the

23  information of these attempts has been available to DMG all along. DMG tries to

24  excuse its delay in seeking to supplement by saying it did not analyze its own data

25  until April 2012. This is a rather odd admission because Anastasia asked for

26  discovery about the alleged screen scraping, and none of the raw data on which

27  DMG seeks to rely to supplement its complaint has been produced by DMG in

28  discovery—instead, a sanitized version of the data (Schmitt Exh. D) was first

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

9

1  disclosed as part of DMG's motion for leave to amend.[7]  DMG has no excuse for

2  waiting until nearly the end of fact discovery before seeking leave to supplement its

3  complaint with allegations based on information that DMG has kept to itself all

4  along.

5       Here, Plaintiff is seeking leave to amend with the same delay that was

6  condemned by the Ninth Circuit in *Jackson* (seven month delay); *Texaco* (eight

7  month delay) and *AmerisourceBergen* (change of theory 12 months into the

8  litigation).  See also *Renz*, 2010 WL 2867615, at *3 (five month delay).  DMG's

9  request to file a Fourth Amended Complaint is untimely.

10      **B.    DMG's Proposed Amendments Are Futile**

11      Two of DMG's proposed amendments are futile: (i) the addition of Partners

12  as a plaintiff, and (ii) the addition of a California common law tortious interference

13  claim.

14          **1.    Adding Dream World Partners As A Plaintiff**

15      DMG's Fourth Amended Complaint does not state a valid claim for relief on

16  behalf of Partners.  The proposed amendment alleges that DMG, not Partners, owns

17  the Dream Marriage websites and business. [Dkt. 180-1 at ¶ 8]  Partners' alleged

18  role is to provide management services to plaintiff DMG.  The amended pleading

19  does not allege how defendants' claimed violation of DMG's trademarks, screen

20  scraping of DMG's website, or tampering with DMG's relationship with its agency

21  clients harmed Partners.  The only allegation about Partners' right to sue for damage

22  to DMG is made in paragraph 9, where plaintiffs allege that "under its management

23

24

25

26  [7] While DMG has produced over two-hundred thousand pages of computerized records and logfiles pertaining to the dream-marriage.com website, DMG's

27  production does not contain information about the alleged screen scraping that DMG now seeks to add to the case.  Soloviev Decl. at ¶¶ 2–94.

28

agreement with DMG, [Partners] has the right to pursue and assert all claims that violate DMG's trademark rights and rights associated with DMG's business."[8]  *Id.*

This vague allegation does not provide a basis for Partners alleged standing to sue in this case. "Whether a plaintiff has standing to sue is the threshold question in every federal case, determining the power of the court to entertain the suit." *McClain v. Am. Econ. Ins. Co.,* 424 F.3d 728, 731 (8th Cir. 2005).  The proposed amended complaint does not allege whether Partners has the right to sue in DMG's name, in which case it is not a proper party, or whether it is the assignee of DMG's claims.  A party which derives its standing to sue from an assignment must specifically plead the assignment in the complaint.  If it does not, its complaint must be dismissed under Rule 12(b)(6).  *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, No. 10-02483, 2011 WL 4407560, at *1 (E.D. Cal. Sept. 22, 2011) (granting motion to dismiss because plaintiff failed to properly allege its putative standing as an assignee to assert claims purportedly held by another); see also *Spine Imaging MRI, LLC v. Liberty Mutual Ins. Co.,* 743 F. Supp. 2d 1034 (D. Minn. 2010).  The Fourth Amended Complaint's failure to plead an assignment to Partners of the claims of DMG renders the complaint futile.

DMG also argues that the addition of Partners is a routine correction because it is the real party in interest in light of the fact that DMG owns all of the interests at stake.  However, DMG has failed to explain why Partners has any interest, let alone the real interest.  DMG claims that Partners' interest arises because Partners is DMG's "managing agent."  However, it is black letter law that an agent cannot sue in its own name for damages to its principal unless it is acting on behalf of an undisclosed principal.  *E.g.*, *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08-1559, 2011 WL 718662 (S.D. Cal. Feb. 22, 2011).  Thus,

---

[8] This so-called management agreement between DMG and Partners has not been produced in discovery.  Juo Decl. at ¶ 19.

the allegation that Partners is the managing agent of DMG does not give Partners standing to sue.

## 2.    Adding A California Claim For Tortious Interference

DMG's addition of a California common law claim for tortious interference is also futile because California has no interest in applying its law to a dispute between DMG, a foreign Nevada corporation located outside of the state of California, and Anastasia, a foreign Kentucky corporation with its principal place of business in Maine, let alone with the four Russian business entities and a British Virgin Islands company that DMG is seeking to add as new defendants.

In a federal question case that involves supplemental jurisdiction over state law claims, the district court applies the choice of law rules of the forum state with respect to the state law claims. *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009). California applies a governmental interest test that considers which state has an interest in having its own law applied and the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state. *Id.* Here, DMG cannot point to any interest California has in protecting it from alleged interference originating from actions taking place in Russia and Ukraine. DMG therefore has no basis to plead a cause of action for tortious interference under California common law.

The proposed addition of Partners, a Nevada corporation with its alleged principal place of business in California, is clearly intended to try to save DMG's California claims including for tortious interference. However, as Anastasia has already demonstrated, Partners has no legal standing to participate as a party in this case. Whether the law of Russia, the Ukraine, or some other state, will provide the rule of decision on the propriety of efforts that took place in Russia and the Ukraine to enforce exclusivity agreements with Russian and Ukrainian agencies, it is clear that California will not provide the applicable law. DMG's attempt to plead a California tortious interference claim is therefore futile.

## C.     DMG Has Acted In Bad Faith

DMG's bad faith is yet another reason its motion for leave to amend should be denied.

- In its Original Complaint, and the three subsequent complaints, DMG alleged that it had a principal place of business in California, and was able to survive a Rule 12(b)(6) motion to dismiss its California Unfair Competition Law claim—now DMG seeks leave to add Partners as a new plaintiff because DMG has decided to abandon its pretense of a substantive California presence.

- In March 2011, DMG refused to produce documents regarding Partners to Anastasia—and yet, more than a year later, DMG is now seeking to add Partners as a new plaintiff.[9]

- DMG has withheld documents that support the new allegations in its Fourth Amended Complaint from Anastasia in discovery— effectively sandbagging Anastasia in order to justify its request to extend the litigation schedule.

Anastasia has litigated this case for nearly two years on the basis of what DMG now concedes are erroneous allegations and assertions. And now DMG is seeking to change its story and extend litigation for at least another nine months. Enough is enough.

### 1.     DMG's Pretext For Adding Partners As A New Plaintiff

The addition of Partners, an entity with no standing, is clearly designed to try to avoid the consequences of the misrepresentations in the four complaints on file

---

[9] DMG's contention that Anastasia will not be prejudiced because it has previously sought "extensive discovery" concerning Partners [Dkt. 179 at 12], is completely disingenuous. DMG neglects to mention that it refused to provide much of that discovery. Juo Exh. C (DMG's Response to Request Nos. 73–75).  It has been over a year since DMG last produced **any** documents to Anastasia.

that DMG's principal place of business is located in California when in fact it is not. DMG admits as much in its brief, where it states that the addition of Partners as a plaintiff is necessary to correct its original counsel's "mistak[en] assertion that Plaintiff [DMG] had its principal place of business in California, when in fact it was [Partners], operating as manager of Plaintiff, that was present in California."  Dkt. 179 at 11.  As previously discussed, DMG's tale is not believable.

That DMG initially never intended for Partners to be a plaintiff in this case is also established by DMG's refusal to produce documents requested by Anastasia's First Set of Requests for Production regarding Dream World Partners, Inc.  For example, in response to Anastasia's requests for documents sufficient to show the formation, ownership, and management structure of Dream World Partners, Inc., DMG objected to these requests as "not relevant" and stated that "DMG will not produce documents responsive to this request."  Juo Exh. C (DMG responses to Request Nos. 73-75).  DMG also refused to provide any documents in response to requests for documents concerning the "operation" of the dream-marriage.com website (*id*. at Request No. 31), yet now alleges that Partners is part of those operations. That was in March 2011, after Mr. Harshman had over four months of experience as Partner's employee and DMG's litigation counsel, and after Ms. Butcher had over a full year managing the day-to-day operations and legal affairs of both DMG and Partners since 2009.[10]  Dkts. 150-1 and 178, and Juo Exh. E at 5-6.

The omission of Partners as a plaintiff from the Original Complaint up to the Third Amended Complaint was not inadvertent, but intentional.  This also is

---

[10] More recently, in April 2012, DMG still was refusing to produce any documents in its responses to Anastasia's new requests for documents sufficient to identify the entities involved with the operation or maintenance of the dream-marriage.com website.  Juo Exh. P.  As of June 6, 2012, DMG still has not produced any documents in response to these requests.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

14

1   consistent with DMG's stonewalling of discovery regarding Partners.  There is

2   simply no good faith basis to add Partners as a new plaintiff at this late stage.

### 2.   Instead Of Producing Documents In Discovery, DMG Withheld Documents For Its Amended Complaint

5       In addition to DMG's prior refusal to produce documents regarding Partners,

6   DMG's proposed supplementation of the complaint two months before the

7   discovery cutoff with events supposedly revealed in logfiles that were not disclosed

8   in discovery despite requests for their production is also obvious bad faith.[11]

9       To support its eleventh-hour amendment, DMG submitted the declaration of

10  Andy Schmitt who reviewed DMG's data that had been collected since 2010, and

11  who provided a summary of that data (Schmitt Exh. D) to DMG's litigation counsel

12  in April 2012.  Mr. Schmitt declared that this was a "thorough" and

13  "comprehensive" list regarding the alleged screen scraping.  [Dkt. 177 at ¶ 18 and

14  26].  However, none of the information in Schmitt's Exhibit D matches the

15  thousands of pages of computer data produced by DMG in discovery.  Soloviev

16  Decl. at ¶¶ 2–4.  Thus, this is not a list of evidence that DMG has obtained in

17  discovery, but a list of evidence that DMG has withheld from discovery.  Such

18  sandbagging is not a sign of good faith.  Rather, it is a sign of bad faith.

### D.   Anastasia Will Be Prejudiced By The Amendment

20      Anastasia has litigated this case for nearly two years, and wants its day in

21  court and not wait another nine months or more.  DMG's proposed Fourth Amended

22  Complaint will dramatically increase the time, expense and management resources

---

[11] DMG's hide-the-ball gamesmanship also extends to the meet-and-confer for the present motion.  After DMG sent its April 27, 2012 letter demanding that Anastasia stipulate to allowing DMG to amend its complaint for a fourth time (Juo Exh. G), Anastasia requested a copy of DMG's proposed amendment (Juo Exh. H), but DMG did not provide a draft of its proposed amended complaint until three weeks later (Juo Exh. I).  DMG's insistence that Anastasia stipulate to an amended complaint sight-unseen is yet another example of DMG's bad faith.

that Anastasia must expend to defend this case.  While substantial discovery disputes exist which are currently being addressed by Magistrate Judge Mumm, the case pled in the Third Amended Complaint against Anastasia is well-advanced. There is less than two months remaining in the current schedule for fact discovery.[12]

DMG's proposed amended complaint vastly complicates the existing case and will prolong this case far more than the nine months that DMG proposes to add to the schedule.  If the amendment is granted, plaintiffs must first serve the new foreign defendants.  Service under international law or a treaty such as the Hague Convention[13] may take up to 6 months or longer.  See Mark R. Joelson, *Litigating International Commercial Disputes, by Lawrence W. Newman and David Zaslowsky. St. Paul: West Publishing Co., 1996 (Softcover)*, 30 Geo. Wash. J. Int'l L. & Econ. 159, 172 (1996) ("the Hague Service Convention imposes no time period for the accomplishment of service, and it is not unusual for service to take between six and eighteen months"); *R.M.B. Electrostat, Inc. v. Lectra Trading, A.G.*, No. 82-1844, 1983 WL 13711, at *1 (E.D. Pa. Jan. 17, 1983) (service of process may be effected by letter rogatory); Kenneth C. Miller, *The Practical Aspects of Litigating Against Foreign Corporations*, 54 J. Air L. & Com. 123, 147 (1988) ("Letters rogatory typically take six months to a year to be executed.").  Once served, the new defendants must be given time to answer or file jurisdictional and other motions, and to conduct discovery.[14]  These facts alone make DMG's estimate

---

[12] The parties may need a short extension to finish the pending discovery.

[13] Both the Russian Federation and the United Kingdom, which has sovereignty over the British Virgin Islands, are signatories to the *Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters*, 20 U.S.T. 361, 658 U.N.T.S. 163, T.I.A.S. No. 6638; Appendix following Fed. R. Civ. P. 4.

[14] The Court previously set an 11-month discovery period [see Dkt. 55], and if the five new foreign defendants are added, they may request a comparable period for their own fact discovery.

1   that only nine months would be needed to be added to the schedule ludicrous.  A

2   more realistic estimate would be a year and a half.  *Harris v. Vector Marketing*

3   *Corp.,* No. 08-5198, 2009 WL 3710696, at *2 (N.D. Cal. 2009) ("Although there is

4   no precise definition for prejudice under Rule 15, prejudice is generally found where

5   the amendment would cause substantial delay in the proceedings.").

6        Additionally, the scope of the case will expand dramatically.  To date,

7   Anastasia has relied on a defense that it is a separate company from the Russian

8   companies with a different history and ownership.  Anastasia is not responsible for

9   the activities of the Russian entities with which it does business. The addition of the

10   five foreign companies, coupled with the allegations that Anastasia has been acting

11   in concert with these  companies, will require Anastasia to participate in the

12   extensive discovery against these foreign entities proposed by DMG, much of which

13   could occur overseas.  This will dramatically increase the cost to Anastasia of

14   defending this action.  *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (agreeing

15   with the district court that "[e]xpense, delay, and wear and tear on individuals and

16   companies count toward prejudice").

17        Moreover, the new claim that the Russian entities (and Anastasia through

18   vicarious liability theories) interfered with plaintiffs' business by insisting that

19   Russian and Ukrainian dating agencies and individuals comply with exclusivity

20   agreements, also vastly expands the scope of this case.  There has been no discovery

21   about the agencies' relationships with the various parties to date.  The amendment of

22   the complaint to add this new theory of liability will require substantial new and

23   expensive discovery, much of it overseas.  The additional time and expense of

24   adding this new claim is apparent.  "[T]he need for a party to conduct supplemental

25   discovery or to consider a new line of legal argument are classic sources of

26   prejudice that have regularly proven sufficient to defeat a motion for leave to

27   amend." *IXYS Corp. v. Advanced Power Tech., Inc*., 2004 WL 135861, at 3 (N.D.

28   Cal. 2004).

1    DMG already has had two years to pursue its various claims against
2  Anastasia, which have been defended at great expense.  It is time for plaintiff to try
3  its case and let Anastasia move on.  If DMG seriously believes it has a case against
4  the Russian and British Virgin Island companies, it is free to commence a separate
5  action against those entities.  Since it now admits it has no significant contact with
6  California, it will presumably bring the case elsewhere.

7    The proposed amendments also vastly expand the scope of the case and the
8  discovery that Anastasia would be required to take with respect to Partners.  Among
9  other things, Anastasia would be required to direct separate discovery requests to
10 Partners as a new party plaintiff, especially since DMG initially refused to produce
11 documents in response to requests for production about the proposed new plaintiff.
12 Juo Exh. C (*e.g.*, DMG's responses to Anastasia Request Nos. 73–75).

13    Undue prejudice occurs when a plaintiff well into a case seeks to add new
14 parties and claims which substantially increase the discovery burden on a defendant
15 and the resulting cost and time necessary to defend the case.  *AmerisourceBergen*,
16 465 F.3d at 953-54.  This is particularly true when a plaintiff belatedly seeks to
17 change the theory of its case.  *Johnson v. Hewlett-Packard Co.*, 809 F.Supp.2d  at
18 1121.  The ruling in *Johnson* is instructive.  In its original complaint and first three
19 amendments, Johnson as a putative class representative alleged that HP was
20 shortchanging its sales people of commissions through a "computer glitch" in the
21 computer which calculated the commissions.  Near the close of discovery Johnson
22 sought to amend its complaint to allege that the data HP entered into the computer
23 system was incorrect.  This would have required new discovery on the accuracy of
24 HP's invoices, payment records and collection of sales data.  The district court
25 denied the amendment, noting that the amendment would require a substantial
26 amount of new discovery. The court stated:

27        Plaintiffs essentially want to press a discovery reset button now
28        that the "computer glitch" theory has not borne fruit. . . . This

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
FILE FOURTH AMENDED COMPLAINT AND EXTEND DISCOVERY
10 CV 5034 RSWL (FFMx)

18

1          late inning knuckleball would create the sort of moving target

2          courts find to be unduly prejudicial.

3    809 F.Supp.2d at 1121-22.

4         DMG is trying to throw the same "late inning knuckleball" in this case.  DMG

5    has known since the outset of the case that the websites with the allegedly infringing

6    names and the screen scraping activities originated in Russia, and that the

7    anastasiadate.com website is owned by a Russian company.  Juo Exh. O.

8    Nevertheless, for the last two years, DMG has pursued its case solely against

9    Anastasia, an American company which over time has had its involvement in the

10   business reduced to handling customer service and billing in the U.S. for the

11   Russian websites.  Plaintiff is apparently now having second thoughts about its

12   ability to hold Anastasia legally responsible for the alleged activities of the foreign

13   companies, and at the eleventh hour wants to hit the "reset button" to introduce a

14   new plaintiff and new defendants, and to start a wave of discovery in Russia, the

15   Ukraine, and the British Virgin Islands, against new parties using a new tortious

16   interference claim.  This is unduly prejudicial to Anastasia.  Using the *HP* court's

17   analogy of a computer keyboard, this Court should hit the "delete" button.

18   **V.    CONCLUSION**

19        In view of the prejudice to Anastasia, DMG's bad faith and undue delay, and

20   the futility of its proposed amendments, the Court should deny DMG's motion for

21   leave to amend and to extent the scheduling order.

22

23   DATED: June 6, 2012               /s/ James Juo

24                                 Craig B. Bailey
                                   James Juo

25                                 FULWIDER PATTON LLP
                                   Attorneys for Defendant

26                                 ANASTASIA INTERNATIONAL, INC.

27

28

19