# Exhibit A

# MANAGEMENT SERVICES AGREEMENT

THIS MANAGEMENT SERVICES AGREEMENT is effective as of the 1st day of January, 2010 (the "*Effective Date*") by and between DREAM MARRIAGE GROUP, INC., a Nevada corporation, 9120 Double Diamond Parkway, Suite 3988, Reno, Nevada, 89521 (the "*Owner*"); and DREAM WORLD PARTNERS, INC., a Nevada corporation, 9701 Wilshire Blvd. 10th Floor #1015, Beverly Hills, CA 90212 (the "*Manager*"). Owner and Manager are sometimes collectively referred to herein as the "Parties."

## RECITALS

WHEREAS, Owner owns a trademark for the word "DREAM MARRIAGE" which has been registered with the United States Patent and Trademark Office (Registration No. 3,760,949) (the "*Trademark*") and owns the operating assets of a business related to online match-making and dating services through internet websites, including the website 'www.dream-marriage.com', and other methods of electronic and cyber-space communications and operations (such assets, the "*Business*");

WHEREAS, Manager has been formed for the purpose of managing the operations of the Business on behalf of the Owner; and

WHEREAS, Owner desires to engage Manager, and Manager desires to be engaged by Owner, to manage the operations of the Business for and on behalf of the Owner from and after the Effective Date, subject to the terms and conditions set forth below.

## TERMS AND CONDITIONS

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein set forth, Manager and Owner hereby agree as follows:

Section 1.   Definitions. As used in this Agreement, the following terms shall have the following meanings:

"*Agreement*" shall mean this Management Services Agreement.

"*Approved Budget*" shall have the meaning provided in Section 4.4.

"*Effective Date*" shall have the meaning set forth in the introductory paragraph hereto.

"*Manager*" shall have the meaning provided in the introductory paragraph hereto.

"*Owner*" shall have the meaning provided in the introductory paragraph hereto.

"*Business*" shall have the meaning provided in the first recital hereto.

"*Trademark*" shall have the meaning provided in the recitals hereto.

Section 2. <u>Appointment</u>. Owner hereby engages the services of the Manager and the Manager hereby accepts such engagement, on the terms and conditions hereinafter provided, as the manager for the management of the Business.

Section 3. <u>Authority</u>.

3.1 <u>General</u>. Owner hereby authorizes Manager to exercise on behalf of the Owner all powers with respect to the Business as the Manager reasonably believes to be necessary and appropriate in the operation of the Business on behalf of the Owner; provided that the Manager shall not be permitted to act in violation of this Agreement or in violation of a lawful, express, written direction of the Owner. Manager shall have no right to any payment (other than as provided herein or as separately agreed with the Owner from time to time) or ownership or equity interest in the Business, nor any claim or lien with respect thereto, by virtue of this Agreement or the performance of its services hereunder. Manager shall be the agent of Owner solely to operate the Business and to perform the duties as set forth in this Agreement.

3.2 <u>Specific Authority</u>. In furtherance and not in limitation of Owner's general grant of authority to Manager in Section 3.1, above, Manager shall have the power in its reasonable discretion:

(a) to direct the formulation and implementation of all policies and strategies for the Business;

(b) to recruit, hire and terminate employees and/or independent contractors for the operation of the Business (it is currently contemplated that all employees related to the Business shall be hired by the Manager, provided that the Manager may in its reasonable discretion determine to cause the Owner directly to hire certain employees, and provided further that employees of the Manager may in certain cases hold themselves out as officers of the Owner or as authorized persons with respect to the Owner so long as such actions are consistent with the terms and conditions of this Agreement);

(c) to receive on behalf of the Owner and to take custody of all funds received in connection with the operation of the Business;

(d) to pay on behalf of the Owner all expenses of the Business, including without limitation all employee salaries and benefit expenses, all fees and expenses of any independent contractors, all amount owed to landlords and equipment lessors under leases or licenses relating to real estate or equipment, all taxes, fees and assessments of governmental agencies, and all other expenses reasonably incurred in connection with the operation of the Business;

(e) to monitor the performance of the Business, to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Business and to take such action as may be necessary or advisable in connection with the Business, as determined by the Manager in its reasonable discretion;

(f) to become on behalf of the Owner a venturer, partner, stockholder, holder of a beneficial interest or other participant or owner in joint ventures, partnerships (whether limited

or general), corporations, trusts or other enterprises, and to cause the Owner to form subsidiaries in connection with the Business;

(g) to execute and deliver on behalf of the Owner and to perform on behalf of the Owner its obligations under contracts and agreements of every kind, and amendments thereto, necessary or incidental to the operation and financing of the Business, including without limitation any contracts or agreements relating to the acquisition, holding, managing, servicing, leasing, operating, maintaining, improving, developing, financing, refinancing, mortgaging and transferring or disposing of any of the assets of the Business (other than the Trademark) or otherwise to the accomplishment of the purposes of the Business, and to take or omit to take such other actions thereunder or in connection therewith that the Manager determines may be necessary, advisable, convenient or incidental to further the purposes of the Business;

(h) to (*i*) retain affiliates of the Owner or the Manager to render other advisory, management or administrative services to the Owner in connection with the Business, *provided* that such retention shall not relieve the Manager of any of its obligations hereunder, and (*ii*) amend or supplement any agreement relating thereto;

(i) to open, maintain and close bank, brokerage and money market accounts, to draw checks or other orders for the payment of moneys, to hedge any temporary or permanent investment assets of the Business, and to invest any funds of the Owner as are temporarily not otherwise required for Business purposes in such manner as the Manager determines to be appropriate;

(j) to engage on behalf of the Owner consultants, attorneys, accountants, financial, strategic and other advisors, and any other agents and employees, including persons that may be affiliates of the Owner or the Manager, and to authorize each such agent and employee (who may be designated as officers) to act for and on behalf of the Owner;

(k) to purchase, from or through others, contracts of liability, casualty and other insurance that the Manager deems advisable, appropriate or convenient for the protection of the assets or affairs of the Business or for any purpose convenient or beneficial to the Owner or Manager, including policies of insurance insuring the Manager and/or the Owner (or in either case their shareholders, directors, officers, employees or other agents) against liabilities that may arise out of the operation of the Business;

(l) to investigate, select, negotiate, structure, purchase, invest in, hold, pledge, divide, combine, exchange, foreclose, convey, assign, grant options with respect to, realize, transfer and sell or otherwise transact business with respect to any temporary or permanent investment assets of the Business;

(m) to pay on behalf of the Owner all expenses of the Business, including without limitation all employee salaries and benefit expenses, all fees and expenses of any independent contractors, all amount owed to landlords and equipment lessors under leases or licenses relating to real estate or equipment, all taxes, fees and assessments of governmental agencies, and all other expenses reasonably incurred in connection with the operation of the Business;

(n) to incur on behalf of the Owner indebtedness, on a recourse or non-recourse basis, to issue guarantees, and to enter into any instrument in connection therewith, including any pledge, security, assignments or indemnity agreements;

(o) to negotiate and execute any deed, lease, easement, mortgage, deed of trust, mortgage note, promissory note, bill of sale, contract, consent, waiver, certificate or other instrument;

(p) to establish, maintain or close one or more offices within or without the State of California and in connection therewith to rent or acquire office space and to engage personnel;

(q) to set aside funds for reasonable reserves, anticipated contingencies and working capital;

(r) to bring, defend and dispose of any investigation, action, suit, arbitration, claim, demand, process or other proceeding relating to the Business (each, a "*Proceeding*") on behalf of the Owner, whether criminal or civil, legal or equitable, including without limitation Proceedings arising from actual or alleged violations of the Owner's contractual rights, the Owner's intellectual property rights and other intangible rights, and the Owner's rights with respect to its trade secrets and other proprietary information; to engage and cause the Owner to pay for counsel in connection with any Proceeding (which counsel may also represent the Manager); to engage or employ such consultants, experts and advisors in connection with a Proceeding as the Manager may determine in its discretion to be appropriate; to settle or compromise any Proceeding on such terms and conditions as the Manager may determine in its discretion to be appropriate; and to waive or release any claims of the Owner or Manager, whether in connection with a settlement or compromise of a Proceeding or otherwise;

(s) to prepare and file all tax returns of the Owner and the Business; to make such elections under the Internal Revenue Code of 1986, as amended, and other relevant tax laws as to the treatment of items of income, gain, loss and deduction, and as to all other relevant matters, as the Manager deems necessary or appropriate; to determine which items of cash outlay are to be capitalized or treated as current expenses; and to select the method of accounting and bookkeeping procedures to be used by the Owner in connection with the Business;

(t) to make such applications for and to obtain such licenses, registrations, permits, and other authorizations from such governmental agencies, self-regulatory organizations, and associations, in the name of and on behalf of the Owner, as the Manager may from time to time determine, including without limitation any registrations or other actions that the Manager may determine to be necessary or appropriate with respect to the Trademark;

(u) to take all action that may be necessary, advisable, convenient or incidental for the continuation of the Owner's and Manager's valid existence as corporations under the laws of the State of Nevada and in any other jurisdiction in which the Manager determines such action is necessary to conduct the activities of the Business as currently conducted or as contemplated to be conducted; and

    (v) to carry on any other activities necessary to, in connection with, or incidental to any of the foregoing.

  3.3 <u>Delegation</u>. Manager may delegate any of its duties hereunder through employees, agents or independent contractors; provided that Manager shall remain responsible for the selection of such service providers.

  3.4 <u>Limitations on Manager's Authority</u>. Notwithstanding anything to the contrary set forth in Sections 3.1 and 3.2, above, the Manager shall not undertake any of the following actions without the prior consent of the Owner:

    (a) any alteration, change or other corporation action on behalf of the Owner that impacts the rights, preferences, privileges or limitations of any class or series of the Owner's capital stock;

    (b) any amendment or waiver of any provision of the Owner's Articles of Incorporation or Bylaws;

    (c) any authorization, declaration or payment of any dividend on, or making any distribution in respect of, or any redemption or repurchase of, any share of the Owner's capital stock;

    (d) any sale of all or substantially all of the assets of the Business, or any merger, consolidation, recapitalization or reorganization of the Owner with or into any other person or entity;

    (e) any voluntary or involuntary liquidation, dissolution, or winding up of the Owner or the Business;

    (f) any license or sublicense of the Trademark, or granting any mortgage, lien, right to purchase or other encumbrance with respect to the Trademark, other than any license of the Trademark to the Manager to the extent necessary to permit the Manager to carry out its duties hereunder;

    (g) the filing for, or consenting to, the bankruptcy of the Owner or any of its subsidiaries;

    (h) the incurring on behalf of the Owner any indebtedness for borrowed money, or the issuance on behalf of the Owner of any debt securities, or the guaranteeing of any indebtedness for borrowed money or the pledging of any of the material assets of the Business to secure any indebtedness for borrowed money if the Owner's aggregate liability in connection therewith would be in excess of $1,000,000; or

    (i) materially changing the nature of the Business.

Section 4.     Responsibilities of Manager.

4.1    Standards and Compliance with Laws. Manager will perform its duties and obligations in a commercially reasonable manner. Manager shall apply for, obtain, and maintain all licenses and permits required in connection with the management, operation, and maintenance of the Business, and shall, at Owner's expense, comply in all material respects with applicable laws, ordinances, rules, regulations and requirements of all federal, state and municipal governments, courts, departments, commissions, boards and offices, which may be applicable to the Business and its operation. Manager shall, at Owner's expense, promptly remedy any violation of any such law, ordinance, rule, regulation, or order known to Manager to the extent practicable and shall promptly notify Owner of any such violation. Manager agrees that during the term of this Agreement it shall (a) cooperate with Owner and (b) use its commercially reasonable efforts to supervise and direct the management, operation, maintenance, and administration of the Business in accordance with the Approved Budget.

4.2    Employees; Independent Contractor. All matters pertaining to the employment, supervision, compensation, promotion and discharge of Manager's employees are the responsibility of the Manager. Manager shall fully comply with all acts and regulations having to do with workmen's compensation, social security, unemployment insurance, hours of labor, wages, working conditions and other employer-employee related subjects. In performing its services hereunder, Manager shall be an independent contractor and not an employee of the Owner. Manager shall conduct reasonable due diligence on all persons hired and when necessary require independent contractors to carry their own insurance coverage.

4.3    Approved Budgets. Manager shall from time to time cooperate with the Owner to prepare a business plan which shall include an operating budget, a capital budget and a marketing plan for the promotion and operation of the Business. Owner and Manager will use good faith efforts to finalize the operating budget and capital budget (collectively, the "*Approved Budget*") prior to the beginning of each fiscal year. During each fiscal year the Manager shall inform Owner of any material increases or decreases in costs and expenses that were not reflected in the Approved Budget and will use commercially reasonable efforts to reduce expenses to the amounts reflected in the Approved Budget.

4.4    Collection of Fees and Other Income. The Manager shall use commercially reasonable efforts to collect on behalf of the Owner all fees, payments, rents and other charges which may become due at any time in connection with the Business or any portion thereof. All monies so collected shall be deposited in the Depository Account.

4.5    Taxes. If Owner hires an independent tax consultant, Manager shall cooperate with such consultant in supplying pertinent data to the consultant. Manager shall pay on behalf of the Owner all taxes due, if any. Manager shall remit to vendors any sales tax on all purchases as required by law. Manager shall be responsible for any penalty imposed on Owner as a result of Manager's failure to remit tax as provided herein, unless such failure is beyond the reasonable control of Manager.

4.6    Preparing and Filing Tax and Other Regulatory Information. The Manager shall use commercially reasonable efforts to collect and maintain information relevant for tax

reporting purposes (including without limitation for the preparation and filing of form W-2s, form 1099s, and other state and federal tax documentation) and other regulatory reporting purposes, and shall use commercially reasonable efforts to make such filings on a timely basis.

4.7     Debts and Liabilities to Third Parties. All debts and liabilities arising in connection with the ownership and operation of the Business are and shall be the obligations of Owner and, provided such debts and liabilities have been incurred in accordance with the terms of this Agreement, the Manager shall not be responsible or liable for any of such obligations by reason of its management, supervision and operation of the Business for and on behalf of Owner.

Section 5.     Responsibilities of Owner.

5.1     Information. Owner shall promptly furnish Manager with all documents and records relating to the management and operation of the Business.

5.2     Maintenance of Sufficient Funds. Owner shall at all times maintain sufficient funds in the operating accounts of the Business to enable Manager to satisfy all obligations of the Business and other obligations provided for herein in a timely manner. If collections are projected to be insufficient or will not be received in time to satisfy this requirement, Owner shall be responsible to provide Manager with the necessary funds. Manager shall not be required to advance funds in connection with the operation of the Business.

5.3     Contracts and Obligations. Contracts relating to the Business may be assigned to and assumed by Manager in its name as agent for Owner or maintained in the name of the Owner and performed hereunder by Manager as agent for Owner. The Manager may enter into contracts, agreements or other instruments in connection with the Business for and on behalf of the Owner or on behalf of the Manager as agent of the Owner, in either case as the Manager may determine in its reasonable discretion; provided that Owner, and not Manager, shall be responsible for all payments and other obligations to third parties thereunder.

5.4     Business Expenses. The expense of all third party independent contractors retained by the Owner or by the Manager on behalf of the Owner shall be a Business expense payable by Owner.

5.5     Obligations Under Contracts. Owner expressly assumes all obligations under any contracts which Manager executes on behalf of Owner under the terms of this Agreement and shall indemnify and hold Manager harmless from all liabilities, costs, and expenses arising in connection with such contracts.

Section 6.     Limited Power of Attorney. The Owner hereby appoints the Manager and its authorized officers and attorneys-in-fact, with full power of substitution, as its true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead, to execute, swear to, acknowledge, deliver, file and record, as appropriate, any and all contracts, agreements, instruments and other documents that the Manager reasonably deems appropriate or necessary in connection with the operation of the Business pursuant to the terms and conditions hereof during the term of this Agreement. The foregoing power of attorney is hereby declared to be irrevocable and a power coupled with an interest, in recognition of the fact that the Owner will be relying

upon the power of the Manager to act as contemplated herein in any filing or other action by it on behalf of the Business.

Section 7. Bank Accounts.

7.1 Depository Account. The Manager shall deposit all receivables and other funds collected from the operation of Business, in operating accounts designated by the Manager and approved by the Owner from time to time. All interest accrued in accordance with the terms of this Agreement shall otherwise remain the property of the Owner. Such operating accounts may be opened in the name of the Owner or the Manager; provided that the in the case of accounts opened in the name of the Manager, all funds held therein shall be held by the Manager in trust for the benefit of the Owner and the funds therein shall only be used in connection with the operation of the Business as contemplated hereunder.

7.2 Access to Accounts. Owner and Manager shall cooperate to give the other such access to any and all funds in the bank accounts described in Section 7.1 as may be reasonably necessary to effect the purpose and intent of this Agreement.

Section 8. Financial Reporting and Record Keeping.

8.1 Books of Accounts. Manager, in the conduct of its responsibilities to Owner, shall maintain adequate and separate books and records for the Business, the entries to which shall be supported by sufficient documentation to ascertain that said entries are properly and accurately recorded to the Business. Such books and records shall be maintained by Manager at Manager's office or at such other location as may be mutually agreed upon in writing. Manager shall ensure such control over accounting and financial transactions as is reasonably required to protect Owner's assets from theft, error or fraudulent activity on the part of Manager's employees or other agents. The Manager shall insure that all books and records, documentation, data and other information required to be maintained during the term of this agreement shall be prepared and reported in a timely and accurate manner, and in accordance with required accounting policies and procedures.

8.2 Financial Reports. The Manager shall prepare and submit to the Owner from time to time all business, financial and other information relating to the Business that Owner may reasonably request.

8.3 Supporting Documentation. Supporting documentation for all expenditures and financial reports shall be provided as requested by Owner.

8.4 Ownership of Books and Records. All books, records, lease and sale information, computer programs provided by Owner, correspondence and Business related records are property of Owner and should be considered confidential and proprietary to Owner.

Section 9. Management Fee. For the management of the Business, Manager shall be entitled to receive as compensation a monthly fee of up to fifteen percent (15%) of the fees and revenues collected from the Business, including collections made by Owner or others designated by Owner as collected from time to time; provided that Manager may in its sole discretion elect

to reduce, waive or defer the payment of any amounts due to Manager under this section from time to time.

Section 10. <u>Non-Discrimination</u>. Manager shall comply with the provisions of Title VII of the Civil Rights Act of l968, as amended, and Executive Order 11063; Titles VI and VIII of the Civil Rights Act of 1964, and, where applicable, Executive Order 11246, as amended, and any applicable state or local laws prohibiting discrimination. Neither Owner or Manager shall relative to the Business, in the provision of services, or in any other manner, discriminate against any person on the ground of race, color, creed, religion, sex, national origin, or any other basis prohibited by law.

Section 11. <u>Term and Termination</u>.

11.1 <u>Term</u>. This Agreement shall become effective as of the Effective Date and shall continue in full force and effect until terminated as provided in Section 11.2, below.

11.2 <u>Termination</u>. This Agreement shall terminate upon the occurrence of the earliest of the following events:

(a) Immediately if, in the reasonable judgment of the Owner, "Cause" exists as defined below;

(b) Immediately (i) upon the sale of the all or substantially all of the assets of the Business, (ii) upon the merger, consolidation, reorganization or recapitalization of the Owner with or into any other person or entity, or (iii) upon the dissolution and winding up of the Owner;

(c) On a date that is no less than (60) days following delivery of written notice of termination by either Party to the other Party (which termination may be made in the sole and absolute discretion of either Party); or

(d) On such date as the Parties may mutually agree.

11.3 <u>Termination for Cause</u>. "Cause" shall mean (i) a default by the Manager in any material respect in the performance or observance of any covenant, condition or term of this Agreement, provided that the breach shall be material and adverse to the Owner and that the Manager shall fail either (x) to cure, terminate or remove such default within fifteen (15) days after written notice thereof from Owner to the Manager, or (y) if such default cannot be cured within the aforesaid 15-day period, to be making substantial and continued progress to cure such default within such additional period as shall be reasonable to cure such default, provided the Manager is capable of curing such default and such cure may be accomplished without damage or expense to the Owner by reason of the cure; or (ii) if the Manager engages in gross negligence, or commits intentional fraud.

11.4 <u>Effect of Termination</u>. Upon termination of this Agreement, Manager shall, as soon as practicable but in no event later than 30 days after the termination is effective:

   (a) surrender and deliver to Owner

     (1) all funds held by Manager in connection with the Business; and

     (2) any other monies of Owner in possession of Manager or in any bank account controlled by Manager;

   (b) deliver to Owner as received any monies due Owner under this Agreement but received by Manager after the effective date of such termination;

   (c) deliver to Owner all materials, equipment, tools and supplies, keys, contracts and documents relating to the Business which are owned by Owner, and such other accountings, papers, and records as Owner shall request pertaining to the Business;

   (d) assign to Owner, without recourse, all of Manager's interest, if any, in such existing contracts relating to the operation and maintenance of the Business; provided that Owner shall be responsible for obtaining any necessary third party consents with respect to such assignments;

   (e) vacate any portion of the premises relating to the Business then occupied by Manager as a consequence of this Agreement (provided that the Owner or a replacement manager of the Business shall enter into an assignment or sublease or any lease entered into by the Manager with respect to the Business); and

   (f) furnish all such information and take all such action as Owner shall reasonably require in order to effectuate an orderly and systematic ending of Manager's duties and activities hereunder. As soon practicable after any such termination, Manager shall deliver to Owner any written reports required hereunder for any period not covered by prior reports at the time of termination. With regard to the originals of all papers and records pertaining to the Business, the possession of which are retained by Manager after termination, Manager shall: (i) make the same available for inspection and reproduction by Owner at reasonable times upon request of Owner and at Owner's request; (ii) deliver same into Owner's possession in the event Owner in good faith requires same for use in a Proceeding; and (iii) not destroy the same without first offering to deliver the same to Owner.

  11.5 <u>Compensation Owed to Manager Upon Termination</u>. Upon termination, all compensation, reimbursements and any other amounts owed by Owner to Manager shall be paid promptly but in no event later than Manager's fulfillment of its obligations owed pursuant to Section 11.4.

  Section 12. <u>Indemnification</u>.

  12.1 <u>Indemnification by the Owner</u>. The Owner agrees to indemnify, defend, and hold the Manager, its officers, directors and employees harmless to the fullest extent permitted by law from and against any and all liabilities, losses, interest, damages, costs or expenses (including, without limitation, reasonable attorneys' fees, whether suit is instituted or not, and if instituted, whether incurred at any trial or appellate level or post judgment) threatened or assessed against, levied upon, or collected from, the Manager, arising out of, from, or in any way related to, the

management of the Business, including without limitation any and all liabilities, losses, damages, costs or expenses incurred by the Manager arising out of, from or relating to, any event or occurrence which may have taken place prior to the effective date or subsequent to the term of this Agreement, or arising from the negligence of Owner or Manager, or the willful misconduct of the Owner or arising from the material breach by the Owner of its obligations under this Agreement. Notwithstanding the foregoing, Owner shall not be required to indemnify the Manager with respect to any liability, loss, damages, cost or expense suffered as a result of the gross negligence or willful misconduct of the Manager or any of the agents or employees of the Manager. Manager shall not be liable for any good faith error of judgment or for any mistake of fact or law, or for anything which it may do or refrain from doing in good faith and in pursuance of its duties and activities hereunder, except in cases of its own willful misconduct or its own gross negligence and that of its employees.

      12.2    <u>Indemnification by the Manager</u>. The Manager agrees to indemnify and hold the Owner, their respective officers, directors and employees harmless to the fullest extent permitted by law from and against any and all liabilities, losses, interest, damages, costs or expenses (including without limitation, reasonable attorneys' fees, whether suit is instituted or not and if instituted, whether incurred at any trial or appellate level or post judgment), threatened or assessed against, levied upon, or collected from, the Owner arising from the gross negligence or willful misconduct of the Manager or any of the agents or employees of the Manager or arising from the material breach by Manager of its obligations under this Agreement. Notwithstanding the foregoing, the Manager shall not be required to indemnify the Owner with respect to any liability, loss, damage, cost or expense to the extent that the same is covered by proceeds of insurance maintained by the Owner or Manager. In addition, the maximum liability and obligation of Manager to Owner arising under or in connection with this Agreement, whatever the claim and for any reason, shall be limited to the amount of the management fees theretofore received by it, and to which it remains entitled, under this Agreement.

      12.3    <u>Notice of Indemnification</u>. A party's duty to indemnify pursuant to the provision of this Section 12 shall be conditioned upon the giving of notice by such party of any suit or proceeding and upon the indemnifying party being permitted to assume in conjunction with the indemnitor, the defense of any such action, suit or proceeding in accordance with Section 12.4 hereof.

      12.4    <u>Third Party Claim Procedure</u>. If a third party (including, without limitation, a governmental organization) asserts a claim against a party to this Agreement and indemnification in respect of such claim is sought under the provisions of this Section 12 by such party against another party to this Agreement, the party seeking indemnification hereunder (the "<u>*Indemnified Party*</u>") shall promptly (but in no event later than 10 business days prior to the time in which an answer or other responsive pleading or notice with respect to the claim is required) give written notice to the party against whom indemnification is sought (the "<u>*Indemnifying Party*</u>") of such claim. The Indemnifying Party shall have the right at its election to take over the defense or settlement of such claim by giving prompt written notice to the Indemnified Party at least five business days prior to the time when an answer or other responsive pleading or notice with respect thereto is required. If the Indemnifying Party makes such election, it may conduct the defense of such claim through counsel or representative of its choosing (subject to the Indemnified Party's approval of such counsel or representative, which approval shall not be

unreasonably withheld), shall be responsible for the expenses of such defense, and shall be bound by the results of its defense or settlement of claim to the extent it produces damage or loss to the Indemnified Party. The Indemnifying Party shall not settle any such claim without prior notice to and consultation with the Indemnified Party, and no such settlement involving any equitable relief or which might have a material and adverse effect on the Indemnified Party may be agreed to without its written consent. So long as the Indemnifying Party is diligently contesting any such claim in good faith, the Indemnified Party may pay or settle such claim only at its own expense. Within 20 business days after the receipt by the Indemnifying Party of written request by the Indemnified Party at any time, the Indemnifying Party shall make financial arrangements reasonably satisfactory to the Indemnified Party, such as the posting of a bond or a letter of credit, to secure the payment of its obligations under this Section 12 in respect of such claim. If the Indemnifying Party does not make such election, or having made such election does not proceed diligently to defend such claim, or does not make the financial arrangements described in the immediately preceding sentence, then the Indemnified Party may, upon three business days' written notice and at the expense of the Indemnifying Party, take over the defense of and proceed to handle such claim in its exclusive discretion and the Indemnifying Party shall be bound by any defense or settlement that the Indemnified Party may make in good faith with respect to such claim. The parties agree to cooperate in defending such third party claims and the defending party shall have access to records, information and personnel in control of the other party or parties which are pertinent to the defense thereof.

12.5   Remedies Cumulative. Except as otherwise provided herein, the rights and remedies expressly provided herein are cumulative and not exclusive of any rights or remedies which the parties hereto may otherwise have at law or in equity. Nothing herein shall be construed to require any of the parties hereto to elect among remedies.

Section 13.   Miscellaneous.

13.1   Notices. Any notice or other communication required or permitted to be made or given under this Agreement, shall be in writing and shall be deemed to have been received by the party to whom it is addressed: (i) on the date indicated on the certified mail return receipt if sent by certified mail return receipt requested; (ii) on the date actually received if hand delivered or if transmitted by telefax (receipt of which is confirmed to sender); (iii) three business days after such notice was deposited in the United States Mail postage prepaid; or (iv) one business day after such notice was delivered to an overnight delivery service, addressed, delivered or transmitted in each case as referenced at the beginning of this Agreement

Each such notice shall be deemed delivered (a) on the date telecommunicated if by telefax, (b) on the date of transmission with confirmed answer back by telex, and (c) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

13.2   Facsimile Signature; Counterparts. This Agreement may be executed by facsimile signature and in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

13.3   Time is of the Essence. All dates and times in this Agreement are of the essence.

13.4     Assignment. The obligations of the Manager and Owner are in each case personal to it, and neither Party may assign its rights or obligations under this Agreement to any third party without the prior consent of the other Party.

13.5     Governing Law. The nature, validity and effect of this Agreement shall be governed by and construed and enforced in accordance with the laws of the state of California.

13.6     Captions. Captions are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text.

13.7     Entire Agreement and Amendment. This Agreement constitutes the entire agreement between the parties hereto related to Business management services for the Business and no modification hereof shall be effective unless made by a supplemental agreement in writing executed by all of the parties hereto.

13.8     No Joint Venture. The Manager shall not be deemed to be a partner or a joint venturer with the Owner, nor shall the Manager have any obligation or liability, in tort or in contract, with respect to the Business, either by virtue of this Agreement or otherwise.

13.9     Severability. If any provision of this Agreement, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of the Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

13.10    Successors. Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties and their successors and permitted assigns.

13.11    Further Assurances. Each party agrees to execute and deliver any and all additional instruments and documents and do any and all acts and things as may be necessary or expedient to more fully effectuate this Agreement and carry on the business contemplated hereunder.

13.12    Arbitration. All disputes under this Agreement that cannot be resolved by the parties shall be submitted to arbitration under the rules and regulations of the Code of Civil Procedure relative to the State of California; provided that either Party shall be permitted to seek emergency injunctive relief in any court of competent jurisdiction. Either party may invoke this paragraph after providing 30 days' written notice to the other party. All costs of arbitration shall be divided equally between the parties. Any award may be enforced by a court of law.

13.13    Third Party Rights. The provisions of this Agreement are for the exclusive benefit of the parties to this Agreement and no other party (including without limitation, any creditor of the Owner or the Manager) shall have any right or claim against the Owner or the Manager by reason of those provisions or be entitled to enforce any of those provisions against the Owner or the Manager.

13.14 <u>Survival</u>. All covenants, agreements, representations and warranties made herein or otherwise made in writing by any party pursuant hereto shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

13.15 <u>Remedies Cumulative</u>. The rights and remedies given in this Agreement and by law to a non-defaulting party shall be deemed cumulative, and the exercise of one of such remedies shall not operate to bar the exercise of any other rights and remedies reserved to a non-defaulting party under the provisions of this Agreement or given to a non-defaulting party by law.

13.16 <u>No Waiver</u>. One or more waivers of the breach of any provision of this Agreement by any party shall not be construed as a waiver of a subsequent breach of the same or any other provision, nor shall any delay or omission by a non-defaulting party to seek a remedy for any breach of this Agreement or to exercise the rights accruing to a non-defaulting party of its remedies and rights with respect to such breach.

13.17 <u>Construction</u>. This Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party causing this Agreement to be drafted.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be duly executed by their duly authorized officers where applicable and sealed as of the date first above written.

MANAGER:

DREAM WORLD PARTNERS, INC.

By: _____
Name: Shyrah Butcher
Its:

OWNER:

DREAM MARRIAGE GROUP, INC.

By: _____
Name: Shyrah Butcher
Its: